SHEVIN, Judge.
D.T.B., a juvenile, appeals an adjudication of delinquency for obstructing/resisting arrest without violence. § 843.02, Fla. Stat. (2004). We reverse.
D.T.B. was charged with obstruet-ing/resisting arrest based on the following incident. On December 13, 2003, in the afternoon, Officers Borrego and Avila approached an apartment complex in a marked police car. The officers wanted to conduct a “voluntary field interview” with D.T.B. to fill out a field interview card. Both officers testified that this is a consensual, citizen encounter. The officers saw D.T.B. standing by a tree. The officers testified that they had observed drug transactions by that tree before. However, they observed no such transactions on this occasion, nor did they suspect any.[1] The officers did not suspect that D.T.B. was involved in any criminal activity on this occasion. When the police pulled up to the area, D.T.B. ran away. The officers yelled, “Stop, Police.” D.T.B. continued to run. The officers caught D.T.B. and arrested him.
D.T.B. was charged with obstructing/resisting arrest without violence under section 843.02. The defense filed a motion for judgment of acquittal, asserting that Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), did not mandate an adjudication in this case. The state argued that under Wardlow D.T.B.’s flight constituted resisting an officer, and satisfied the elements of the offense under section 843.02. The court denied the motion. D.T.B. was adjudicated delinquent.
The question we are asked to resolve in this appeal is whether the holding in Wardlow, that flight from police in a high crime area creates reasonable suspicion such that the police can stop a citizen without violating the Fourth Amendment to the United States Constitution, transforms the flight into the crime of resisting arrest, sufficient to satisfy the elements of a conviction under section 824.02. We hold that it does not, and reject the state’s reading of Wardlow.
In Wardlow, the defendant “fled upon seeing police officers patrolling an area known for heavy narcotics trafficking. Two officers caught up with [defendant], *524 stopped him and conducted a protective patdown for weapons. Discovering a .38 caliber handgun, the officers arrested [the defendant].” 528 U.S. at 121, 120 S.Ct. 673. The question before the Court was “whether the initial stop [of the defendant] was supported by reasonable suspicion.” Id. at 124 n. 2, 120 S.Ct. 673. Noting that whether the stop occurs in a high crime area is a relevant factor to be considered in a Terry[2] analysis, the Supreme Court held that the police did not violate Ward-low’s fourth amendment rights when they stopped him when he fled in a high crime area. Id.
The state now argues that, under Ward-low, D.T.B.’s flight in a high crime area gave the police reasonable suspicion to stop him, and, having the right to stop D.T.B., the flight was sufficient to prove that D.T.B. had committed the offense of resisting arrest under section 824.02. We cannot adopt such an expansive reading of Wardlow. Wardlow did not criminalize running from the police. Wardlow only held that running from the police in a high crime area gave the police reasonable suspicion to allow “officers confronted with such flight to stop the fugitive and investigate further.” Wardlow, 528 U.S. at 125, 120 S.Ct. 673. Under Wardlow, this creates a justification for the police to conduct nothing more than a Terry stop, a “minimal intrusion, simply allowing the officer to briefly investigate further.' If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go his way.” Id. at 126, 120 S.Ct. 673.
This language leads us to conclude that the Wardlow Court did not intend for flight to be used as a justification for arrest and subsequent prosecution. We find that it was improper for flight to be used as the vehicle for charging D.T.B. with resisting or obstruction. Here, as the Wardlow Court envisioned, if “the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go his way.” Wardlow, 528 U.S. at 126, 120 S.Ct. 673. However, that was not done. The motion for judgment of acquittal should have been granted.
In some cases, flight can support a conviction under 843.02. However, to succeed in those eases the state must prove “that (1) the officer had an articula-ble well-founded suspicion of criminal activity that justifies the officer’s detention of the defendant, and (2) the defendant fled with knowledge that the officer intended to detain him or her.” V.L. v. State, 790 So.2d 1140, 1142-43 (Fla. 5th DCA 2001). Nothing in the transcript before us demonstrates that the officers who approached D.T.B. had “an articulable well-founded suspicion of criminal activity” to justify D.T.B.’s detention. In fact, the case was just the opposite. The officers did not suspect D.T.B. was engaged in any criminal activity at all. The officers only wanted to fill out their field interview card — a completely consensual encounter. The state cannot graft Wardlow’s holding onto the statutory requirement to assert that for purposes of section 843.02 reasonable suspicion is now the equivalent of “articulable well founded suspicion of criminal activity” to support detention of the defendant. Although D.T.B.’s flight may have given the officers reasonable suspicion to stop D.T.B. under Wardlow, Ward-low did not create an articulable well founded suspicion of criminal activity sufficient to support an arrest, and justify the charge of resisting. D.T.B. has not chal *525 lenged the stop, he has challenged the sufficiency of the evidence establishing the elements of the state’s case. State v. Williams, 742 So.2d 509, 510 (Fla. 1st DCA 1999)(motion for judgment of acquittal challenges the legal sufficiency of the evidence to establish each element of the crime charged).
In D.G. v. State, 831 So.2d 256, 257 (Fla. 3d DCA 2002), this Court, citing Wardlow, articulated the rule that “[ajbsent reasonable suspicion of the commission of a crime, a person has an affirmative right to avoid police contact.” In D.G., as here, there were no facts or circumstances supporting a reasonable suspicion that the juvenile had committed a crime, and, hence, there was no probable cause to arrest the juvenile. The officers in this case testified they had no suspicion whatsoever, or even the intention to arrest D.T.B. They wanted to conduct a field interview. Therefore, as there was not going to be an arrest, logically, D.T.B. cannot be charged with having resisted an arrest. Wardlow does not create the leap in logic to justify the outcome the state would have us adopt to support the adjudication.
Recently, in R.E.D. v. State, — So.2d -, 2004 WL 2346740, 29 Fla. L. Weekly D2339 (Fla. 3d DCA Oct.20, 2004), this Court held that interference with an ongoing police operation is insufficient to support an obstruction conviction. Following that reasoning, a reversal is required in this case. Here, there was no evidence that D.T.B. committed any crime upon which the officers would base an arrest, and support an obstruction charge. The officers wanted to conduct a voluntary interview. While D.T.B.’s flight may have been sufficient to justify a “minimal intrusion, simply allowing the officers] to briefly investigate further,” 528 U.S. at 126, 120 S.Ct. 673 upon having learned nothing further, D.T.B. should have been allowed to go on his way. Id. As in R.E.D., the officers were not involved in the lawful execution of a legal duty so that D.T.B.’s flight would constitute obstruction.
The cases prior to Wardlow interpreting section 843.02 uniformly hold that flight is insufficient to constitute resisting arrest without violence. D.M. v. State, 681 So.2d 797 (Fla. 2d DCA 1996)(passenger of stopped car who fled from police not guilty of obstruction without violence); S.G.K. v. State, 657 So.2d 1246 (Fla. 1st DCA 1995)(presence at scene of auto theft followed by flight when police approached insufficient to justify finding juvenile resisted arrest without violence); F.B. v. State, 605 So.2d 578 (Fla. 3d DCA 1993)(same). Wardloiv does not create any basis for disturbing these cases. As Judge Farmer explained in his concurrence in Slydell v. State, 792 So.2d 667, 675 (Fla. 4th DCA 2001):
If the act of fleeing itself obstructed the officer in the performance of his duty, then Wardlow’s holding has no application to the obstruction charge, because Wardlow’s holding deals with the consequences of acts and occurrences after the flight ended and the police seized him. Hence, while under Wardlow headlong flight affords a basis for a limited Terry stop and a patdown for weapons, I agree that it affords no basis to sustain [a] conviction for obstructing an officer by such flight.
In our case, as Judge Farmer reflected in the Slydell concurrence, “[t]he answer to the question whether the state proved a prima facie case of obstructing an officer without violence will be found in the cases interpreting our state statute, not in Wardlow.” Id.
We are mindful of the cases the state cites to support its argument that mere flight is sufficient to justify conviction under 843.02. McGee v. State, 818 So.2d 558 *526 (Fla. 2d DCA 2002); F.E.A. v. State, 804 So.2d 528 (Fla. 1st DCA 2002); H.H. v. State, 775 So.2d 397 (Fla. 4th DCA 2000). In McGee, the court addressed whether there was reasonable suspicion to stop the defendant after his flight from police in a high crime area. That opinion does not address the issue before us today. In F.E.A., the juvenile was charged with possession of cannabis, paraphernalia and alcohol. The juvenile attacked the stop of his vehicle, arguing the police lacked reasonable suspicion. The stop was upheld under Wardlow, because the juvenile left a high crime area at the sight of the police. The stop was not the basis of a resisting^obstructing charge in that case. To the extent that our holding today conflicts with these cases, we certify conflict therewith.
Based on the foregoing, we conclude that the state has failed to demonstrate that D.T.B. resisted or opposed arrest so as to justify adjudication under section 843.02. We therefore reverse and remand for entry of an order granting the motion for judgment of acquittal.
Adjudication reversed; remanded with directions.

. Officer Borrego testified that he did not write in the arrest form that the tree was a high crime area because that “would be speculation.”

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct 1868, 20 L.Ed.2d 889 (1968). Terry is the seminal case requiring an officer to have "reasonable, ar-ticulable suspicion that criminal activity is afoot,” to conduct a brief investigatory stop of a citizen. Wardlow, 528 U.S. at 123.