PER CURIAM.
C.E.L. seeks review of the decision of the Second District Court of Appeal in C.E.L. v. State, 995 So.2d 558 (Fla. 2d DCA 2008), on the ground that it expressly and directly conflicts with the decision of the Third District Court of Appeal in D.T.B. v. State, 892 So.2d 522 (Fla. 3d DCA 2004). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. The issue presented in this case is whether a juvenile’s continued flight, within a high-crime area, in defiance of a police officer’s verbal order to stop, constitutes the offense of resisting, obstructing, or opposing an officer without violence under section 843.02, Florida Statutes (2007). We conclude, based on the plain language of section 843.02, that the interpretation provided by the Second District’s en banc opinion resolves the statutory question. This Court is obligated to apply the law as written by the Legislature and to follow the Fourth Amendment precedent laid out by the United States Supreme Court,[1] even if we question the wisdom of that precedent or the public policy behind the law.
FACTS AND PROCEDURAL BACKGROUND
C.E.L., a fifteen-year-old African-American male, was convicted of resisting a law enforcement officer without violence under section 843.02 after he ran from two ap *1183 proaching officers in a high-crime area and then failed to obey their verbal command to stop. At the time the police officers approached, C.E.L. was simply “standing ... in the public area of an apartment complex.” C.E.L., 995 So.2d at 563 (Alten-bernd, J., concurring).[2] Patrolling the complex in response to a prior complaint regarding drugs and trespassing, the two officers first noticed C.E.L. standing with another teenaged companion and approached them. Upon seeing the officers, each wearing vests emblazoned with “Sheriff” over their plain clothes, C.E.L. “immediately turned around and took flight.” Id. at 559 (majority opinion). The officers then ordered C.E.L. to stop, but he disregarded the order and continued to run. Although C.E.L. resisted the officers’ verbal command, he was ultimately apprehended and arrested for obstruction pursuant to section 843.02.[3] At the adjudicatory hearing on the obstruction charge, C.E.L. moved for a judgment of dismissal on the ground that the State’s evidence was insufficient, asserting that running, by itself, was not enough to support a charge of obstructing or opposing an officer. The circuit court denied the motion, found C.E.L. guilty of the offense, and adjudicated him delinquent.
On appeal to the Second District, C.E.L. argued that the circuit court’s denial of his motion for judgment of dismissal was erroneous because he did not commit the crime of resisting without violence. Specifically, C.E.L. alleged that because the two officers lacked reasonable suspicion to detain him before he took flight, any action he took after flight could not constitute the offense of resisting without violence. The Second District agreed that the officers did not initially possess reasonable suspicion to detain C.E.L. before his initial flight from them. C.E.L., 995 So.2d at 562. However, relying on Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000),[4] the district court concluded, in an en banc opinion, that C.E.L.’s “unprovoked flight” from the officers in a “high-crime area” provided reasonable suspicion and that C.E.L.’s continued flight, in defiance of a lawful police order to stop, constituted sufficient facts upon which to base a conviction for the violation of resisting an officer without violence. The Second District explained that it had “previously recognized that flight in knowing defiance of a law enforcement officer’s lawful order to stop constitutes an act of resisting, obstructing, or opposing an officer in the lawful execution of a legal duty.” C.E.L., 995 So.2d at 561. The district court concluded that the evidence against C.E.L. was sufficient to sustain a conviction because “the police command to stop was issued in the lawful performance of a legal duty and C.E.L’s knowing defiance of the command [after he took flight] was an act of resisting, obstructing, or opposing an officer.” C.E.L., 995 So.2d at 562.
The Third District in D.T.B. reached the opposite conclusion under similar facts. *1184 There, the district court concluded that reasonable suspicion to detain an individual must arise before the flight begins in order for the flight to constitute the offense of resisting an officer without violence.
ANALYSIS
In resolving the conflict issue presented, we emphasize that C.E.L. does not contest the fact that his actions constituted “unprovoked flight” under Wardlow or the State’s position that the apartment complex was known for drug activity in a “high-crime area.” Further, there has been no suggestion that the officers’ order to stop was unlawful or that C.E.L. did not act in knowing defiance of that order. In fact, he has conceded before this Court that “flight provided the deputies with reasonable suspicion to conduct an investigatory stop.” Essentially, C.E.L. argues that the sole act of flight cannot be used as the basis for reasonable suspicion necessary to support a conviction for resisting arrest and that whether C.E.L. unlawfully resisted the police officers’ order must be evaluated from the point at which he commenced running, before any lawful command to stop occurred. Thus, the issue in this case is whether there should be a specific rule of law interpreting section 843.02 to require that reasonable suspicion of criminal activity exist before an individual flees.
Applying the United States Supreme Court precedent in Wardlow and adhering to the plain language of section 843.02, we conclude that the plain language of section 843.02 does not support the distinction set forth by the Third District in D.T.B. that would require reasonable suspicion to arise before the flight begins. In reaching this conclusion, we first explain the reasoning of Wardlow and the elements of section 843.02. Next, we explore the divergent conclusions reached by the Second District in the instant case and the Third District in D.T.B. Finally, we explain why we are compelled to approve the reasoning of the Second District.
A. Wardlow
Because Wardlow changed the legal landscape for establishing reasonable suspicion, we begin with an analysis of the United States Supreme Court’s decision. In Wardlow, the Supreme Court held that an individual’s unprovoked, “headlong” flight from the police in a high-crime area can create sufficient reasonable suspicion to warrant an investigative Terry[5] stop. Wardlow, 528 U.S. at 124-25, 120 S.Ct. 673. The defendant in Wardlow fled immediately upon seeing a four-car caravan of police officers arrive in an area of Chicago known for heavy narcotics trafficking. Id. at 121, 120 S.Ct. 673. After observing the defendant holding an opaque bag, police officers pursued the defendant, stopped him, and then proceeded to search him for weapons. Id. at 122,120 S.Ct. 673. When the search revealed that the defendant was carrying a handgun and five live rounds of ammunition, officers arrested him for violating an Illinois firearm statute for which he was subsequently convicted. Id. at 122,126,120 S.Ct. 673.
The defendant then challenged his conviction on the ground that the police lacked reasonable suspicion sufficient to justify an investigative stop pursuant to Terry. Wardlow, 528 U.S. at 124, 120 S.Ct. 673. In upholding his conviction, the Supreme Court explained that although *1185 “[a]n individual’s presence in an area of expected criminal activity, standing alone, is not enough to support [an investigatory stop,]” that factor, in addition to the defendant’s unprovoked, “[h]eadlong flight” upon noticing the police provided reasonable suspicion that the defendant was involved in criminal activity, and further investigation under Terry was justified. Wardlow, 528 U.S. at 124-25, 120 S.Ct. 673.
In elaborating on the defendant’s actions, the Court emphasized that its decision was consistent with its prior decision in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), holding that “when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business.” Wardlow, 528 U.S. at 125, 120 S.Ct. 673 (citing Royer, 460 U.S. at 498, 103 S.Ct. 1319). Moreover, any “refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.” Id. (quoting Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). However, the Supreme Court viewed an individual’s actions in fleeing from a police officer as “not a mere refusal to cooperate” or “going about one’s business” but “just the opposite.” Id.
In reaching the conclusion that flight from a police officer was more than a refusal to cooperate, the Court analogized to cases where it had recognized “nervous, evasive behavior” as a “pertinent factor in determining reasonable suspicion.” Id. at 124, 120 S.Ct. 673. It then observed that “[h]eadlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.” Id. Relying on these two concepts, the Court concluded that flight from police could be one relevant factor in determining reasonable suspicion. See id. at 125, 120 S.Ct. 673. The Supreme Court finally stated that if, upon further investigation, “the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way.” Id. at 126, 120 S.Ct. 673. In other words, had the officers not found the defendant in possession of a firearm, he would have been free to leave. See id.
Whether or not the Supreme Court, in deciding Wardlow, considered that one possible effect would be to further criminalize otherwise innocent behavior is not for us to decide. Rather, we must decide whether the inevitable result of Wardlow leads to a conclusion in this case that unprovoked, continued flight, in a high-crime area, and in defiance of a police officer’s verbal command to stop, gives rise to a criminal charge of resisting an officer, even if no other independent ground for detention or arrest exists.
B. The Elements of Section 834.02
Our analysis of whether C.E.L. committed a criminal offense of resisting without violence focuses on the plain language of section 843.02. See Koile v. State, 934 So.2d 1226, 1233 (Fla.2006) (“[T]his Court must first look to the plain language of the statute, and if the statute is ambiguous on its face, the Court can only then rely upon the rules of statutory construction in order to discern legislative intent.”). Section 843.02 provides, in pertinent part, that “[w]hoever shall resist, obstruct, or oppose any officer ... in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemean- or of the first degree.” Id. In other words, to support a conviction for obstruction without violence, the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) *1186 the defendant’s action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty. See N.H. v. State, 890 So.2d 514, 516-17 (Fla. 3d DCA 2005); H.H. v. State, 775 So.2d 397, 398 (Fla. 4th DCA 2000); S.G.K. v. State, 657 So.2d 1246, 1247 (Fla. 1st DCA 1995).
To determine whether the State established the first element, whether the officer was engaged in a lawfully executed legal duty, the court must first look to the legal standard that governs his or her actions. See Tillman v. State, 934 So.2d 1263, 1271, 1274 (Fla.2006). After examining the applicable legal standard, the next inquiry is whether the officer complied with that legal standard at the point where the act of resistance occurred. See id. at 1271. Once the court determines that the officer was engaged in the lawful execution of a legal duty, the inquiry is whether a fact-finder could find that the defendant’s actions constituted obstruction or resistance of that legal duty.
Turning to the legal standards implicated here, we note that as a general rule, flight, standing alone, is insufficient to form the basis of a resisting without violence charge. See Mosley v. State, 739 So.2d 672, 675 (Fla. 4th DCA 1999).[6] Therefore, the act of flight alone is not a criminal offense. To be guilty of unlawfully resisting an officer, an individual who flees must know of the officer’s intent to detain him, and the officer must be justified in making the stop at the point when the command to stop is issued. See H.H., 775 So.2d at 398; see also V.L. v. State, 790 So.2d 1140 (Fla. 5th DCA 2001). A stop is justified when an officer observes facts giving rise to a reasonable and well-founded suspicion that criminal activity has occurred or is about to occur. See Davis v. State, 973 So.2d 1277, 1279 (Fla. 2d DCA 2008); see also Popple v. State, 626 So.2d 185, 186 (Fla.1993). In turn, whether an officer’s well-founded suspicion is reasonable is determined by the totality of the circumstances that existed at the time of the investigatory stop and is based solely on facts known to the officer before the stop. See Travers v. State, 739 So.2d 1262, 1263 (Fla. 2d DCA 1999); McCloud v. State, 491 So.2d 1164,1165 (Fla. 2d DCA 1986). If the facts support a conclusion that the officers had reasonable suspicion to detain an individual at the point when the individual is ordered to stop, the next inquiry is whether a fact-finder could find that the individual’s acts constituted obstruction or resistance without violence of the officers’ execution of their legal duty.
C. The Reasoning of the Second District in C.E.L.
Framing the issue as whether an exception should be made from the general rule that knowing defiance of a lawful order to stop constitutes a violation of section 843.02, the Second District concluded that no exception existed and affirmed C.E.L.’s adjudication. C.E.L., 995 So.2d at 561-62. The en banc decision, authored by then-Judge Canady, explained that the threshold for establishing a resisting without violence offense required the officer to be in “lawful execution” of a “legal duty,” mandating application of “the legal standards governing the duty undertaken by the law enforcement officer at the point that an ... act ... of resistance occurs.” Id. at *1187 560 (quoting Tillman v. State, 934 So.2d 1263, 1271 (Fla.2006)).
In finding the officers’ order to stop lawful, the Second District relied on the holding in Wardlow that a defendant’s unprovoked flight upon noticing the police in a high-crime area is suggestive of wrongdoing and provides reasonable suspicion to justify an investigatory detention under Terry. C.E.L., 995 So.2d at 561-62. Although C.E.L. conceded that Wardlow provided the officers with reasonable suspicion after he took flight, he argued that section 843.02 required legal justification for detention to exist not only at the time of flight, but before he initially fled from police.
Receding from its prior precedent in J.D.H. v. State, 967 So.2d 1128 (Fla. 2d DCA 2007),[7] the Second District concluded that “an offense under section 843.02 is committed by a person fleeing the police who defies a lawful order to stop even if the justification for detaining that person does not exist before he initially flees from the police.” C.E.L., 995 So.2d at 562. It was simply “of no consequence that the police lacked a justification for detaining C.E.L. before his initial flight from them.... Although the mere act of running from the police was not an offense under section 843.02, once a lawful command to stop had been issued by an officer, knowing defiance of that command was such an offense.” Id.
D. The Reasoning of the Third District in D.T.B.
When faced with a factually similar situation, the Third District reached the opposite conclusion. See D.T.B., 892 So.2d at 523. In D.T.B., two police officers approached an apartment complex with the intent to conduct a consensual field interview with a juvenile, D.T.B. Id. While there, the officers saw D.T.B. standing by a tree where the officers had, on previous occasions, observed drug transactions. Id. On this occasion, however, the officers had not observed any of those types of transactions and did not suspect that any were taking place. Id. Moreover, the officers did not suspect that D.T.B. was involved in any criminal activity. Id. Yet when the officers pulled their marked police car into this area, D.T.B. fled. Id. The officers verbally commanded D.T.B. to stop, but he continued to run. Id. The officers caught D.T.B., arrested him, and subsequently charged him with obstructing without violence under section 843.02. Id. At trial, *1188 D.T.B. filed a motion for judgment of acquittal, asserting that Wardlow “did not mandate an adjudication in this case.” Id. The trial court denied D.T.B.’s motion, found that D.T.B.’s flight satisfied the elements of the statute, and adjudicated him delinquent. Id.
In reversing the trial court’s holding, the Third District found that “it was improper for flight to be used as the vehicle for charging D.T.B. with ... obstruction.” Id. at 524. The court explained that when an individual flees from police in a high-crime area, Wardlow’s holding only provides a justification for the police to conduct nothing more than a Terry stop, or a “minimal intrusion, simply allowing the officer to briefly investigate further.” Id. (quoting Wardlow, 528 U.S. at 126, 120 S.Ct. 673). It did not, however, “criminalize running from the police” or “intend for flight to be used as a justification for arrest and subsequent prosecution.” Id. Thus, if “the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go [on] his way.” Id. (quoting Wardlow, 528 U.S. at 126, 120 S.Ct. 673). Because that was not done in D.T.B., the district court reasoned, D.T.B.’s motion for acquittal should have been granted. Id. The court reasoned that while Wardlow gave the officers reasonable suspicion to stop the defendant, it did not provide a basis for a conviction of obstruction without violence.[8]
E. Our Conclusion Approving the Second District’s Opinion in C.E.L.
C.E.L. concedes that Wardlow provided the officers with reasonable suspicion to conduct an investigatory stop, but argues that reasonable suspicion must have existed before he took flight. With this concession, C.E.L. asks us to adopt a general rule that section 843.02 requires reasonable suspicion of criminal activity to exist before an individual flees, when officers first approach a suspect. In this case, the Second District declined to adopt such an interpretation of the statute. See C.E.L., 995 So.2d at 562. We agree with the Second District that the application of Wardlow to section 843.02 provides no basis for the interpretation that reasonable suspicion must arise before the flight begins.
The plain language of section 843.02 makes it a punishable offense for an individual to resist without violence an officer engaged in the lawful execution of a legal duty. We acknowledge that when flight is the act of resistance, an individual who flees must know of the officer’s intent to detain him, and the officer must be justified in making the stop at the point when the act of resistance occurs. See Tillman, 934 So.2d at 1263; H.H., 775 So.2d at 398. In this case, however, C.E.L. does not argue that he was unaware of the officers’ verbal command to stop or of their intent to detain him. For this reason, we must only resolve the question of whether the officers, at the moment they ordered C.E.L. to stop, were justified in doing so.
An obstruction without violence charge is supported if an individual obstructs an officer in the lawful performance of his or her legal duty. § 843.02, Fla. Stat. (2007). Under the statute’s plain *1189 language, it is of no consequence whether the obstructing conduct is initiated before the officer has any legal duty to act. The essential inquiry should instead focus on whether the officer was lawfully executing a legal duty when the obstructing conduct occurred. As the Second District aptly stated, “[t]here is no reason that a person who knowingly defies an officer’s lawful command to stop in such circumstances should be absolved from responsibility under section 843.02.... Under section 843.02, lawful police action based on Ward-low should not be treated differently than lawful police action based on other grounds.” C.E.L., 995 So.2d at 563. Therefore, applying Wardlow’s holding to the facts here, C.E.L.’s flight in a high-crime area created the reasonable suspicion sufficient to warrant a lawful investigative stop. C.E.L.’s continued flight in knowing defiance of the officer’s lawful order to stop constituted the offense of obstructing without violence pursuant to section 843.02, and accordingly, we approve the Second District’s holding in C.E.L.
CONCLUSION
The plain language of section 843.02 makes it an offense for any person to resist, without violence, a law enforcement officer when the officer is engaged in a lawfully executed legal duty. Under Wardlow, the moment C.E.L. took flight in a high-crime area, the officers were provided with reasonable suspicion to warrant an investigatory stop. Therefore, the officers were engaged in the lawful execution of a legal duty. Thus, C.E.L.’s continued flight in defiance of the officers’ lawful command constituted the offense of resisting an officer without violence under section 843.02.
Based on the foregoing reasoning, we approve the Second District’s holding in C.E.L. and disapprove of the Third District’s opinion in D.T.B.
It is so ordered.
PARIENTE, LEWIS, POLSTON, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., specially concurs with an opinion, in which LABARGA and PERRY, JJ., concur.
QUINCE, C.J., dissents with an opinion.
CANADY, J., recused.

. See art. V, § 12, Fla. Const.

. The apartment complex is located in a neighborhood that “is sometimes referred to as a ‘suitcase city' and is locally regarded by law enforcement as a ‘high-crime neighborhood.’ " C.E.L., 995 So.2d at 563 (Altenbernd, J., concurring).

. After C.E.L. was apprehended and arrested on the obstruction charge, the officers also determined that he had an outstanding arrest warrant. However, the officers’ discovery of the existence of the outstanding arrest warrant after he was stopped has no effect on our analysis of the section 843.02 violation.

.In 'Wardlow, the United States Supreme Court held that a defendant's “unprovoked flight upon noticing the police” in a high-crime area was suggestive of wrongdoing and therefore provided reasonable suspicion justifying an investigatory detention. See Wardlow, 528 U.S. at 124-26, 120 S.Ct. 673.

. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct 1868, 20 L.Ed.2d 889 (1968) (holding that absent probable cause to arrest, a police officer may approach an individual to conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal conduct is afoot).

. This is entirely consistent with Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), where the United States Supreme Court held that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. Id. at 498, 103 S.Ct. 1319; see also Wardlow, 528 U.S. at 125, 120 S.Ct. 673.

. In J.D.H., the Second District recognized that "an individual is guilty of resisting or obstructing an officer by flight only if he flees while knowing of the officer's intent to detain him and if the officer is justified in detaining the individual before he flees." Id. at 1130 (second emphasis added). In J.D.H., the juvenile defendant fled from the police, who were conducting a trespass investigation at a basketball court in a public housing project late in the evening. Id. at 1129-30. The defendant initially ignored the officers’ verbal commands to stop; when the defendant finally stopped, the officers arrested him and found cocaine on his person. Id. at 1130.
At issue in J.D.H. was whether contraband found in the search should have been suppressed because the arrest was unlawful. Id. at 1129. The arresting officer testified that the defendant was arrested for not obeying the police order to stop, which was issued after he initially fled from the police. Id. at 1130. To resolve the issue, the Second District concluded that "because [the defendant] fled from officers who had no legal right to detain him, he could not have been lawfully arrested for resisting an officer without violence." Id. Notably, the Second District rejected the State's argument that the defendant’s flight created both the reasonable suspicion to stop him under Ward-low and the probable cause to arrest him for resisting an officer without violence because it "would improperly criminalize the simple act of fleeing from an officer and expand the holding of Wardlow beyond its plain language." Id. at 1132.

. Although D.T.B. was charged with resisting arrest without violence, a violation of section 843.02 is not limited to resisting arrest, but rather expansively criminalizes resistance of an officer who is in the performance of a lawful duty without violence. See, e.g., Tillman, 934 So.2d at 1269 (explaining that the crime of resisting an officer with violence "has sometimes been described inaccurately as 'resisting arrest with violence' " and noting that "neither the title of the statute ... nor its explicit terms limit it to arrest scenarios") (emphasis added).