RAMIREZ, C.J.
 

 This is an appeal from an order denying a motion to suppress all evidence gathered as a result of Williams’ illegal arrest. Because we believe the officer who arrested Williams had probable cause to arrest him, we affirm.
 

 The charges against Williams stem from a shootout on October 13, 2006, between a group of drug sellers and undercover police officers Ray Robertson and Michael Galvez. One of the alleged drug sellers, Gregory Frasier, was shot and killed during the shootout. The State charged Williams and his co-defendant, Rodney Solomon, with various offenses relating to the drug operation and shootout. Williams was arrested three days after the shooting.
 

 Williams moved to suppress cocaine and marijuana seized from his person alleging he had been arrested unlawfully. At the motion to suppress, the State called one witness — Officer Bill Raya — to testify about the events leading up to Williams’ arrest. He testified that he was on-duty as a uniformed patrol officer on October 16, 2006. At around 4:40 p.m., Officer Raya received a dispatch reporting an anonymous call about a young black male who possibly was involved in the police shooting that had occurred on October 13, 2006. The shooting had occurred at apartments located at NW 135th Street and NW 30th Avenue in Opa-Locka. The anonymous caller stated that the subject was wearing a Miami Dolphins jersey with dark pants and that he was located in the vicinity of 89th Street and NW 20th Avenue.
 

 Officer Raya responded to that location. He testified that he heard Officer Mourino advise, over the police radio, that he had spotted a person fitting the description of the subject described in the dispatch. He heard Officer Mourino advise that he was going to approach the suspect, then reported that the subject was running.
 

 The police established a perimeter to prevent the subject from escaping the area. Officer Ray saw a black male pop his head out from behind a bush about two houses away from where the officer was positioned. The male was wearing a jersey and matched the description given by the dispatcher and by Officer Mourino over the police radio a few moments earlier. Officer Raya ran toward the male yelling, “stop police.”
 

 In response to Officer Raya’s command to stop, the subject turned away from the officer and quickly headed back in the
 
 *598
 
 direction from which he had just come. Officer Raya chased the male, tackled him, and took him into custody. The arrest occurred at 4:45 p.m. The State offered no evidence as to whether or not Williams was ai'rested in a high-crime area.
 

 In
 
 C.E.L. v. State,
 
 24 So.3d 1181 (Fla.2009), the Florida Supreme Court was presented with the issue of whether “a juvenile’s continued flight, within a high-crime area, in defiance of a police officer’s verbal order to stop, constitutes the offense of resisting,
 
 obstructing,
 
 or opposing an officer without violence under section 843.02, Florida Statutes (2007).”
 
 Id.
 
 at 1182. As in
 
 C.E.L.,
 
 Williams does not contest that his actions constituted “unprovoked flight” from Officer Raya.
 
 See Illinois v. Wardlow,
 
 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Similarly, there has been no suggestion that Officer Raya’s order to stop was unlawful or that Williams did not act in knowing defiance of that order. The only distinction between our case and
 
 C.E.L.
 
 is that the prosecutor did not elicit testimony that the vicinity of 89th Street and NW 20th Avenue is a high crime area.
 

 The opinion in
 
 C.E.L.
 
 explains that
 
 Wardlow.
 
 “concluded that flight from police could be one relevant factor in determining reasonable suspicion.”
 
 C.E.L.,
 
 24 So.3d at 1185. We believe in our case we have other factors: an anonymous tip that Williams had been involved in the police shooting three days prior, a description of Williams, concealment by Williams in some bushes, and flight from the police a second time. The argument that no evidence had been elicited that this vicinity was a high crime area was not made to the trial court. Had the argument been made below, the State could have recalled the officer and elicited such testimony. We find it difficult to believe that the officer would have testified that this was
 
 not
 
 a high crime area.
 

 In
 
 C.E.L.,
 
 the Florida Supreme Court’s reasoning was anchored in its interpretation of section 843.02, Florida Statutes (2007), and what constitutes obstructing an officer in the lawful performance of his or her legal duty. The Court concluded that “it is of no consequence whether the obstructing conduct is initiated before the officer has any legal duty to act. The essential inquiry should instead focus on whether the officer was lawfully executing a legal duty when the obstructing conduct occurred.”
 
 Id.
 
 at 1189.
 

 We conclude that the lack of testimony as to whether this was a high crime area was amply overcome by the anonymous tip, the description, the concealment and the second flight.
 

 Affirmed.