SHEPHERD, J.
S.L. appeals an adjudication of guilt for interfering with the administration and functions of an educational institution in violation of section 877.13(l)(a), Florida Statutes (2010), and resisting arrest without violence in violation of section 843.02, Florida Statutes (2010). We conclude the trial court erred in adjudicating S.L. on the interference charge, but affirm on the charge of resisting arrest.[1]
On September 22, 2010, the day of the incident in this case, S.L. was a thirteen-year-old middle school student in attendance at the Robert Renick Educational Center, a school for emotionally and behaviorally disturbed children in grades K-12. At about noon on that date, S.L. and his class were proceeding toward the school cafeteria when S.L. caught sight of Renick Educational Center Dean of Discipline, David Jefferson, and Miami-Dade Public Schools Officer Dadd at the opposite end of the same hallway. S.L., “out of nowhere,” began calling out insults, obscenities and making rude gestures toward Officer Dadd. Dean Jefferson and Officer Dadd were about twenty yards from S.L. when S.L. commenced his outbursts.[2]
Dean Jefferson suggested to Officer Dadd they keep walking, but Officer Dadd wished to speak with S.L., so the two took S.L. to an area “out by the teacher’s lounge,” where no other students were present. After it became apparent Officer Dadd "wasn’t getting anywhere,” Officer Dadd decided to let S.L. return to the cafeteria. As Dean Jefferson escorted S.L. to the cafeteria entrance, S.L. turned and hurled one last insult at Officer Dadd. Officer Dadd ordered S.L. to come back, but S.L. “took off.” At that point, a school security guard escorted S.L. from the cafeteria and S.L. was taken into an office by Dean Jefferson and Officer Dadd, because, again, Officer Dadd “didn’t want the kids to see this.”
In the office, S.L. continued to be uncooperative and aggressive, saying, “I hate police officers ... I can’t stand you guys.” Officer Dadd handcuffed S.L. and began to fill out paperwork to arrest him for “disruption of school function.” Officer Armando Calzadilla was called to transport S.L. from the school to the Juvenile Assessment Center. When Officer Calzadilla arrived at the school, S.L. was sitting handcuffed in a chair. S.L. continued to curse and yell, at one point attempted to stand up, and refused to sit back down when so ordered.
Based on S.L.’s continued unruliness, Officer Calzadilla and Officer Dadd decided to take S.L. to Officer Calzadilla’s police car to detain S.L. so Officer Dadd could return and complete his arrest paperwork. En route, S.L. began kicking at Officers Dadd and Calzadilla, and pulling his hands away from them in an attempt to escape. Although the officers were able to place S.L. in the vehicle, S.L. continued kicking and spitting, and banged his head against the windows of the vehicle as well. The two officers, along with a third who had just arrived, pulled S.L. out of the car again to tie his feet together to “keep his feet from moving around the vehicle.” According to Officer Calzadilla, once back inside the police vehicle, S.L. stated, “I want to kill myself.” At this point, the *1083 officers decided to take S.L. to the Citrus Crisis Center “for his welfare,” rather than to the Juvenile Assessment Center as originally planned. S.L. was Baker Acted at that facility.[3]
On November 1, 2010, after a non-jury trial, S.L. was adjudicated guilty of knowingly disrupting or interfering with the administration or functions of an educational institution under section 877.13(l)(a), and resisting arrest without violence in violation of section 806.13(l)(b). At a disposition hearing held on March 14, 2011, the trial court also found S.L. had violated the terms of his probation in four other cases, see supra note 1, because he had violated curfew, been suspended from school, and picked up the new convictions. S.L. was committed to a moderate-risk juvenile facility.
S.L.’s first point on appeal is that the trial court erred in denying his motions for judgment of dismissal, on the ground the evidence presented by the State was insufficient to support the crime of interfering with the administration or functions of an educational institution. In reviewing a trial court’s motion for judgment of dismissal, a de novo standard of review applies. P.N. v. State, 976 So.2d 90, 91 (Fla. 3d DCA 2008). While the evidence must be viewed in the light most favorable to the State, if the State fails to present sufficient evidence to establish a prima facie case of the crime charged, then a judgment of dismissal is proper. Id.
Section 877.13(l)(a) states: “(1) It is unlawful for any person: (a) Knowingly to disrupt or interfere with the lawful administration or functions of any educational institution.” We previously have addressed the elements of the crime of “knowingly disrupting or interfering with the administration or functions of an educational institution” in M.C. v. State, 695 So.2d 477 (Fla. 3d DCA 1997).[4] Although M.C. involved a facial challenge to section 877.13 on the grounds it violated M.C.’s right to freedom of speech and was over-broad and vague, M.C. provides a useful framework for reviewing the sufficiency of the evidence in this case.
In M.C., M.C. stormed into the main office of a Miami-Dade County middle school, where both she and her brother were students, waving her hands and hurling insults at a school police officer in a loud and threatening manner for arresting her brother moments earlier. A group of five to seven other students followed M.C. into the office and joined the protest. The main office of the school contained the principal’s office. As a result of M.C.’s actions and loud verbal outbursts, the duties and functions of those in the office temporarily were brought to a halt. Id. at 479. We affirmed M.C.’s adjudication under section 877.13(l)(a). We concluded section 877.13 suffered from none of the constitutional maladies alleged, noting that culpable intent is a necessary element of the offense. We explained:
The obvious intent of section 877.13 is to ensure that the educational institutions *1084 and their administrators are free to perform their lawful functions without undue or unwarranted interference or disruption from others. We note early on that this statute does not seek to proscribe or regulate the content of any particular speech; rather it seeks to regulate expressive activity or conduct which significantly interferes with lawful educational functions.
Id. at 480 (emphasis added). The “intended purpose” of the statute, we concluded, “is to prevent only that expression or conduct which materially disrupts or interferes with normal school functions or activities.” Id. at 481 (emphasis added); see also A.M.P. v. State, 927 So.2d 97, 100 (Fla. 5th DCA 2006) (recognizing section 877.13 prohibits conduct “specifically and intentionally designed to stop or impede the progress of any normal school function or activity occurring on the school’s property.”) (citing T.J. v. State, 867 So.2d 1238 (Fla. 5th DCA 2004), quoting M.C., 695 So.2d at 483).
The adjudication in the case before us rests upon a much thinner factual reed, namely that in response to S.L.’s antics, some of the students arrived at the cafeteria or their classroom quicker than usual.[5] However, this movement is just what Ren-ick teachers are trained to do in the event of a situation of this type. While the trial court found an acceleration of activity constituted an interference with school function, getting students to lunch or class slightly ahead of schedule cannot be said to be a “material” disruption. Dean Jefferson testified:
[T]he teachers did a marvelous job. They got their kids in the cafeteria away from the situation. So the kids who might have reacted didn’t have a chance to react, because their teacher moved them away from the situation. And that’s what we are trained with at Ren-ick.
There was no disruption of either lunch or classroom activities. We find no evidence, as well, from which it can be inferred that S.L. specifically and intentionally intended to stop or impede any activity. See A.M.P., 927 So.2d at 100 (concluding child’s conduct did not violate section 877.13 where State offered no evidence child intended to disrupt school’s function by getting into a fight with another student in a bathroom, and by intentionally bumping an assistant principal who broke up the fight, or that any function was disrupted); L.T. v. State, 941 So.2d 551, 552 (Fla. 2d DCA 2006) (holding child’s conduct did not violate section 877.13 where State offered no evidence that child intended to stop or impede the progress of any normal school function by joining an ongoing fight for the purpose of protecting her sister, even if she knew the fight was disrupting the campus); S.W.W. v. State, 833 So.2d 877, 877 (Fla. 3d DCA 2003) (concluding child’s conduct did not violate section 877.13 where State did not establish that the child acted “with the intention that his behavior impede the successful functioning” of the school or that he acted “with reckless disregard of the effect of his behavior”).
Count II, resisting an officer without violence pursuant to section 806.13(l)(b), is another matter. To convict a defendant of resisting or obstructing an *1085 officer without violence, the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the actions of the defendant obstructed, resisted, or opposed the officer in the performance of that legal duty. O.B. v. State, 36 So.3d 784, 786 (Fla. 3d DCA 2010). “The element of lawful execution of a legal duty is satisfied if an officer has either a founded suspicion to stop the person or probable cause to make a warrantless arrest. Otherwise, the individual has a right to ignore the police and go about his business.” Id. (citing Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); E.A.B. v. State, 851 So.2d 308, 311 (Fla. 2d DCA 2003)). Importantly, the determination must be made based upon the facts known to the officers at the time, not on the ultimate finding of guilt. See C.E.L. v. State, 24 So.3d 1181, 1186 (Fla. 3d DCA 2009); see also Wardlow, 528 U.S. at 125,120 S.Ct. 673.
At the time Officer Dadd detained S.L. in this case, S.L. had been yelling obscene, racially charged, and abusive insults loudly in the hallway, and had run back into the cafeteria, where other students were present, after Officer Dadd had instructed S.L. to come toward him. 5.L.’s conduct was sufficient at that moment to give “rise to a reasonable and well-founded suspicion that criminal activity had occurred or is about to occur.” C.E.L., 24 So.3d at 1186. This is so even though, based upon the evidence adduced, we today have concluded S.L.’s conduct, while boorish, disrespectful, uncivil, and undoubtedly a violation of school disciplinary rules, did not rise to the level of the crime of “knowingly” interfering with the lawful administration or functions of an educational institution.
Having determined Officer Dadd was engaged in a lawful duty when he took custody of S.L. from the school security guard who escorted him from the school cafeteria and into a school office to effectuate his arrest, we finally consider whether “the defendant’s action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty.” Id. at 1186. Of this, there can be no doubt. If S.L. did not resist while in the school office, he most certainly did when he kicked at Officers Dadd and Cal-zadilla, screamed at them, and retracted his hands while the officers escorted him to the police car. Once in the police car, he continued to kick so that Officer Calza-dilla feared S.L. would break a window. This required the police to remove S.L. and tie his feet together to subdue him. We are satisfied the totality of S.L.’s conduct toward the police in this case is sufficient to uphold the trial court’s findings. We therefore affirm the charge of resisting arrest without violence.
Affirmed in part, reversed in part, and remanded for further proceedings in compliance with this opinion.
SCHWARTZ, Senior Judge, concurs.

. S.L.'s adjudication in this case caused him to be found in violation of probation on four other cases: J09-1272, J09-6184, J09-4488A, and J10-1704. S.L. has appealed those orders as well. We summarily affirm the probation violation orders in each of these cases.

. Dean Jefferson testified S.L. was yelling epithets, such as “I can't stand the Po, Po.”; "I hate the Po[,] Po.”; "F the Po, Po.”; "You cracker Po[,j Po.”; and "Po, Po could suck my you know what.”, as well as making hand gestures, such as grabbing his crotch.

. In Florida, if there is reason to believe a person has a mental illness, and if there is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or others in the near future, and if certain other prerequisites are met, the "Baker Act” authorizes law enforcement officers to take that person into custody and deliver the person to a facility for an involuntary psychiatric examination. See § 394.463, Fla. Stat. (2010).'

. In M.C., we interpreted the term “disrupt” synonymously with term "interfere,” meaning "to throw into confusion or disorder,” or “to interrupt or impede the progress.” Id. at 483.

. As previously indicated, the Renick Educational Center is a school for emotionally and behaviorally disturbed children. In the event of an incident, the teachers are trained to move their students away from the situation. There were three classes of students in the hallway at the time of the incident in this case. The teachers simply stepped up the pace of the movement of their classes to their destinations, the cafeteria or classrooms, so any children who might have reacted did not have a chance to react.