[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14446
Non-Argument Calendar
_____

D.C. Docket No. 2:05-cr-14026-DLG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONY JAY SAUNDERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 22, 2019)

Before TJOFLAT, JORDAN and FAY, Circuit Judges.

PER CURIAM:

Tony Jay Saunders appeals following the district court's revocation of his supervised release. We affirm.

## I. BACKGROUND

In 2005, following a jury trial, Saunders was convicted of possession with intent to distribute five or more grams of crack cocaine (Count 1), possession with intent to distribute cocaine hydrochloride (Count 2), and possession with intent to distribute marijuana (Count 3), all of which were in violation of 21 U.S.C. § 841(a)(1). The district court sentenced him to 130 months of imprisonment for Counts 1 and 2, and 120 months of imprisonment for Count 3, all to be served concurrently, followed by a total of 8 years of supervised release. Saunders appealed his convictions, and we affirmed. *United States v. Saunders*, 196 F. App'x 873 (11th Cir. 2006).

In 2008, the district court reduced Saunders's total sentence, pursuant 18 U.S.C. § 3582, to 120 months of imprisonment. The court did not modify any of the other provisions of his sentence, including his supervised release conditions.

Saunders discharged his custodial sentences, as amended, in 2014, at which point he began serving his supervised release terms. Less than a year later, however, probation officials sought to revoke his release due to violations he had committed in 2015. The district court revoked Saunders's supervised release and sentenced him to time served; it imposed all of his original release conditions.

2

In 2018, probation officials filed the present petition to revoke Saunders's release. They alleged that Saunders had violated the conditions of his supervised release by committing four new crimes in February 2018: (1) battery by strangulation, in violation of Florida Statute § 784.041(2)(a); (2) resisting an officer without violence, in violation of Florida Statute § 843.02; (3) burglary of a conveyance or structure with an assault or battery, in violation of Florida Statute § 810.02(2)(a); and (4) tampering with a witness, victim or informant, in violation of Florida Statute § 914.22.

A magistrate judge heard testimony at the detention hearing and the final revocation hearing. The government called three witnesses: Danielle Peltier, the victim of Saunders's abuse, who testified at both proceedings; Port Saint Lucie Police Officer Salvador Garcia, who also testified at both proceedings; and Port Saint Lucie Police Officer Supreet Fraga, who testified at the final revocation hearing. Saunders called two defense witnesses: Sharmane Saunders, his daughter; and Colleen Heinssen, Sharmane's mother.

The magistrate judge issued a report and recommendation ("R&R"), recommending that the district court find that Saunders had violated the terms of his supervised release. First, the judge concluded that Saunders had committed battery by strangulation. The judge reasoned that Peltier's testimony established that Saunders had committed the crime, as her testimony was a "detailed,

3

chronological and coherent account of what happened." The judge stated that Peltier's "demeanor on the stand was emotional yet direct. She identified specific reasons for the altercation, specified where the events occurred . . ., and had no difficulty recollecting the events, answering questions or providing relevant details." Additionally, the judge reasoned that the officers' testimonies corroborated Peltier's testimony. The judge also stated that the Computer Aided Dispatch ("CAD") report corroborated her timeline of events, despite Saunders's arguments that the CAD report casted doubt on Peltier's testimony.

The judge also found Heinssen's testimony unpersuasive, noting that she was not present at the incident and that "she has her own motive to keep [Saunders] out of prison since she lives with him and their children as a family and benefits from his financial support." The judge concluded that Sharmane also was not credible. The judge ultimately concluded that Peltier was a "credible witness" and her testimony was consistent in all material respects.

Next, the judge concluded that Saunders had resisted an officer without violence. The judge reasoned that the officers had reasonable suspicion, "if not probable cause," to stop Saunders when he decided to flee, because they knew that someone had called 911 and complained of being choked by Saunders, they had found and identified Saunders near his truck, and Officer Garcia had observed red

4

marks on Peltier's neck.  Furthermore, Saunders knew that they were police officers when he fled, and he continued to flee in defiance of their orders to stop.

The judge also concluded that Saunders had committed burglary of a structure or conveyance.  The judge reasoned that Peltier tried preventing Saunders from entering her home, but he forced his way inside with his key; then when he was asked to leave, he smashed Peltier's phone and attacked her.  Although Saunders had a key, his permission to enter was revoked when Peltier attempted to prevent him from coming inside and told him to leave.

Finally, the judge concluded that Saunders had committed tampering with a victim.  Saunders had smashed Peltier's phone after she informed him to leave or she would call the police; he was trying to prevent her from calling the police, which the judge found was sufficient to satisfy the elements of tampering with a victim.

After independently reviewing the record, the district court overruled Saunders's objections and adopted the R&R, finding that Saunders had violated the terms of his supervised release.  The district court revoked his supervised release and ordered him to serve an additional 18 months of imprisonment, followed by three years of supervised release.

On appeal, Saunders contends that the magistrate judge's findings of fact and credibility determinations, which were adopted by the district court, were

clearly erroneous, because Peltier's testimony was unbelievable.[1] Additionally, Saunders argues that the district court erred in concluding that he had committed the Florida crime of resisting an officer without violence.

## II. DISCUSSION

### A. Credibility Determination

We "review a district court's revocation of supervised release for an abuse of discretion." *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010). A district court may revoke a term of supervised relief if, by a preponderance of the evidence, it finds that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3). We must accept a district court's findings of fact unless clearly erroneous. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993). "[T]he Supreme Court has recognized [that] a trial court's choice between 'two permissible views of the evidence' is the very essence of the clear error standard of review." *United States v. Rodriguez De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511 (1985)). Therefore, "[s]o long as the basis of the trial court's decision is supported by the record *and* does not involve a

---

[1] Saunders does not specifically mention in his brief that he is challenging the determination that he committed battery by strangulation, burglary of a structure or conveyance, and tampering with a victim; however, his arguments in regard to Peltier's credibility go to all three of these violations.

6

misapplication of a rule of law," it is rare for us to conclude that the trial court's determination is clearly erroneous. *Id.*

Furthermore, "[c]redibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). In fact, we have said that a "trial judge's . . . choice of whom to believe is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony." *Id.* (alteration in original) (quoting *United States v. Cardona-Rivera*, 904 F.2d 1149, 1152 (7th Cir. 1990)). "In other words, [w]e must accept the evidence unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Id.* (alteration in original) (quoting *United States v. Eddy*, 8 F.3d 577, 580 (7th Cir. 1993)). Thus, "in evaluating the factual version of events . . . we should defer to the magistrate judge's determinations unless [the judge's] understanding of the facts appears to be 'unbelievable.'" *Id.*

Saunders argues that the magistrate judge's findings of fact and credibility determinations regarding Peltier's testimony, subsequently adopted by the district court, were erroneous. His contention lacks merit because he has not shown that the district court credited "*exceedingly* improbable testimony." *See id.* His primary argument to show that Peltier's testimony was not believable centers

around her timeline of events compared to the CAD report and other slight inconsistencies.  However, this does not make Peltier's testimony improbable as a matter of law.  Certainly, being strangled and smothered could be a reasonable explanation as to why Peltier could not give minute-by-minute testimony of the incident, and this was for the magistrate judge to sort out, which she did. Furthermore, the magistrate judge concluded that the CAD report actually supported Peltier's timeline of events, which a review of the CAD report supports. Accordingly, the magistrate judge's decision to credit Peltier was a reasonable choice between two permissible views of the evidence, which we cannot disturb.

**B. Resisting an Officer Without Violence**

Under Florida law, it is unlawful for an individual to "resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer."  Fla. Stat. § 843.02.  The Florida Supreme Court has stated that, in order to support a conviction, the State must prove: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty."  *C.E.L. v. State*, 24 So. 3d 1181, 1185-86 (Fla. 2009).

In regard to flight, the Florida Supreme Court explained the following:

[W]e note that as a general rule, flight, standing alone, is insufficient to form the basis of a resisting without violence charge.  Therefore, the act

8

of flight alone is not a criminal offense. To be guilty of unlawfully resisting an officer, an individual who flees must know of the officer's intent to detain him, and the officer must be justified in making the stop at the point when the command to stop is issued. *A stop is justified when an officer observes facts giving rise to a reasonable and well-founded suspicion that criminal activity has occurred or is about to occur. In turn, whether an officer's well-founded suspicion is reasonable is determined by the totality of the circumstances that existed at the time of the investigatory stop and is based solely on facts known to the officer before the stop.* If the facts support a conclusion that the officers had reasonable suspicion to detain an individual at the point when the individual is ordered to stop, the next inquiry is whether a fact-finder could find that the individual's acts constituted obstruction or resistance without violence of the officers' execution of their legal duty.

*Id.* at 1186 (emphasis added) (citations omitted).

Here, the officers had reasonable suspicion to stop Saunders, and his flight, despite being told to stop by police, constituted resisting an officer without violence. The officers had reasonable suspicion to stop Saunders based on (1) Peltier's 911 call accusing Saunders of choking her, (2) Officer Garcia's observation of red marks around Peltier's neck, (3) officers identifying Saunders near a truck that matched the description that Peltier gave to dispatch, and (4) Saunders's unprovoked flight from uniformed officers, and his continued flight after they directed him to stop. Contrary to Saunders's contentions, probable cause was not needed, but only reasonable suspicion, and thus it does not matter if probable cause was lacking or if officers were still conducting their investigation.

9

Accordingly, the district court did not err in concluding that Saunders had committed the offense of resisting an officer without violence.

**AFFIRMED**.