CORTINAS, J.
Fifteen-year-old O.B., his brother, and a Mend were on their way to play basketball at an elementary school near the brothers’ home when it began pouring rain. The youths sought shelter under a neighbor’s carport. Just as the rain was abating, a police car pulled up, and one of the officers, with his gun drawn, approached the youths. This scared them, and they ran away. O.B. became separated from the others and hid in someone’s backyard, where he was soon apprehended by a newly-arrived officer, who ordered him to lie face down in the mud and handcuffed him. Then, the boy testified, the officers kicked him in the face and threw him over a fence; when his father arrived, he found O.B.’s eye swelling shut and his shirt torn.
O.B. was charged with resisting an officer without violence. After an adjudicatory hearing at which one of the original officers and the arresting officer both testified, the trial judge indicated that she would base her ruling on the answer to a single question: Is responding to a BOLO tantamount to the lawful execution of a legal duty? Answering that question in the affirmative, the court issued O.B. a judicial warning and withheld adjudication of delinquency, which O.B. now appeals.
O.B. argues that the State failed to establish either that the officers had the requisite reasonable suspicion to detain him or that he fled with knowledge that the officers intended to detain him.
In order
[t]o convict [a defendant] of resisting or obstructing an officer without violence, the State is required to prove that (1) the officer was engaged in the lawful execution of a legal duty; and, (2) the actions of the defendant obstructed, resisted or opposed the officer in the performance of that legal duty.
V.L. v. State, 790 So.2d 1140, 1142 (Fla. 5th DCA 2001) (internal citations omitted).
First, “the [S]tate must establish that the officer was engaged in the lawful scope of his or her duties.” M.M.H. v. State, 929 So.2d 628, 629 (Fla. 3d DCA 2006) (citing B.D.H. v. State, 903 So.2d 390 (Fla. 3d DCA 2005)). “The element of lawful execution of a legal duty is satisfied if an officer has either a founded suspicion to stop the person or probable cause to make a warrantless arrest.” E.A.B. v. State, 851 So.2d 308, 311 (Fla. 2d DCA 2003). Otherwise, “the individual has a right to ignore the police and go about his business.” Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).
A stop is justified when an officer observes facts giving rise to a reasonable and well-founded suspicion that criminal activity has occurred or is about to occur. In turn, whether an officer’s well-founded suspicion is reasonable is determined by the totality of the circumstances that existed at the time of the investigatory stop and is based solely on facts known to the officer before the stop.
C.E.L. v. State, 24 So.3d 1181, 1186 (Fla.2009) (internal citations omitted). “For reasonable suspicion justifying a detention to exist, ‘the detaining officer[ ] must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” Tillman v. State, 934 So.2d 1263, 1273 (Fla.2006) (quoting *787 United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). “Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), ... requires ‘specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.”’ Id. The officer “must be able to articulate something more than an ‘inchoate and unparticularized suspicion or “hunch.” ’ ” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Once these requirements are satisfied, a Terry stop should be “ ‘a minimal intrusion, simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go his way.’ ” D.T.B. v. State, 892 So.2d 522, 524 (Fla. 3d DCA 2004) (quoting Wardlow, 528 U.S. at 126, 120 S.Ct. 673).
The trial court, on the basis of Billips v. State, 777 So.2d 1094 (Fla. 3d DCA 2001), and E.A.B., determined that, as a matter of law, simply responding to a BOLO constitutes the lawful execution of a legal duty. However, both of these cases support the opposite determination: that police officers seeking to detain an individual in response to a BOLO are not lawfully executing a legal duty unless they have the requisite reasonable suspicion. In Billips, this Court held that the fact that the defendant was driving a car matching the description in the BOLO provided the probable cause necessary to “seiz[e] the vehicle as evidence in their investigation of the crime.” Billips, 777 So.2d at 1095. In E.A.B., the Second District found that, despite the issuance of a BOLO, “[t]he testimony simply did not establish the officers’ well-founded, articulable suspicion of criminal activity,” and therefore “the State did not establish that ... the officers were engaged in the lawful execution of a legal duty when they pursued and apprehended” the defendant. E.A.B., 851 So.2d at 311—12.
Similarly, in this case, “there were no facts or circumstances supporting a reasonable suspicion that [O.B.] had committed a crime, and, hence, there was no probable cause to arrest [him].... Therefore, as there was not going to be an arrest, logically, [the juvenile] cannot be charged with having resisted an arrest.” D.T.B., 892 So.2d at 525; see also D.G. v. State, 831 So.2d 256 (Fla. 3d DCA 2002). All that the officer testified to was that he was dispatched in response to a burglary in the neighborhood. The trial court deemed the contents of the BOLO inadmissible hearsay; therefore, it is unknown whether a description of the suspects was even given, much less whether the youths matched such a description. The State says merely that the officers “observed three African-American males in the backyard,” not that they observed them engaging in any criminal or suspicious conduct.
O.B. draws parallels between his situation and Jean v. State, 987 So.2d 196 (Fla. 4th DCA 2008), and L.M. v. State, 694 So.2d 118 (Fla. 3d DCA 1997). In the former case, as here, the officers were dispatched in response to an attempted burglary in a residential neighborhood, it was the middle of the day, and Jean had “a reasonable explanation why he was in the neighborhood.” Jean, 987 So.2d at 198. Furthermore, “[d]espite the fact that Jean was found in close proximity to the scene of the crime,” the State failed to provide any “evidence that he or his companions were acting suspiciously,” and the officer’s conclusory statement that Jean met the BOLO’s description of one of the suspects was insufficient under the totality of the circumstances to “provide a reasonable suspicion of criminal activity that would justify the stop and detention.” Id. In L.M., police had detained several youths near the location of a burglary merely for *788 wearing clothing fitting the BOLO description, although the youths were doing nothing unusual and “were not involved in any criminal activity.” L.M., 694 So.2d at 119. This Court held that the officer did not have reasonable suspicion to detain the juveniles.
The State contends that Jean and L.M. are distinguishable from the instant case because here, upon seeing the police, the youths took flight, and therefore, C.E.L. is more pertinent. There, the Florida Supreme Court found the defendant guilty of resisting arrest, basing its decision on Wardlow, which “held that a defendant’s ‘unprovoked flight upon noticing the police’ in a high-crime area was suggestive of wrongdoing and therefore provided reasonable suspicion justifying an investigatory detention.” C.E.L., 24 So.3d at 1183, n. 4 (citing Wardlow, 528 U.S. at 124-26, 120 S.Ct. 673).
“[A]s a general rule, flight, standing alone, is insufficient to form the basis of a resisting without violence charge.” C.E.L., 24 So.3d at 1186 (citing Mosley v. State, 739 So.2d 672, 675 (Fla. 4th DCA 1999)); see D.T.B., 892 So.2d at 525. Even “a suspect’s mere presence at the scene of a crime and flight therefrom is insufficient. ...” F.B. v. State, 605 So.2d 578, 578 (Fla. 3d DCA 1992) (citing M.F. v. State, 549 So.2d 225 (Fla. 3d DCA 1989)).
However, “[fjlight can support a resisting charge if the state proves that (1) the officer had an articulable well-founded suspicion of criminal activity that justifies the officer’s detention of the defendant, and (2) the defendant fled with knowledge that the officer intended to detain him or her.” V.L., 790 So.2d at 1143. As this Court observed, “Wardlow did not criminalize running from the police. Wardlow only held that running from the police in a high crime area gave the police reasonable suspicion to allow ‘officers confronted with such flight to stop the fugitive and investigate further.’” D.T.B., 892 So.2d at 524 (quoting Wardlow, 528 U.S. at 125, 120 S.Ct. 673) (emphasis added).
C.E.L. conceded the first point of V.L., “that Wardlow provided the officers with reasonable suspicion to conduct an investigatory stop,” as his flight did take place in a high-crime area. C.E.L., 24 So.3d at 1188. In contrast, O.B. maintains that the officers had no reasonable suspicion to detain him. Indeed, they did not, both for the reasons established above and because of the absence of any testimony that O.B.’s flight took place in a high-crime area, an element essential to “create” reasonable suspicion.
C.E.L. virtually admitted the second point of V.L. by failing to “argue that he was unaware of the officers’ verbal commands to stop or of their intent to detain him.” C.E.L., 24 So.3d at 1188. Here, in contrast, there is no evidence that O.B. heard any order to stop; in fact, he testified that when he “took off running,” he did not hear the officers issue a command, and he was unaware whether an officer was after him in particular. The State therefore failed to prove the second requirement, that “an individual who flees must know of the officer’s intent to detain him.” C.E.L., 24 So.3d at 1188.
Neither of the requirements in either V.L. or C.E.L. — (1) “flight in a high-crime area creating] the reasonable suspicion sufficient to warrant a lawful investigative stop,” or (2) “continued flight in knowing defiance of the officer’s lawful order to stop constituting] the offense of obstructing without violence” — is present here. Id. at 1189. We therefore find that the trial court erred in finding O.B. guilty of resisting an officer without violence.
Reversed and remanded.