EMAS, J.
J.W. appeals an order withholding adjudication of delinquency and placing him on probation for the delinquent offenses of possession with intent to distribute cocaine and resisting an officer without violence. J.W. contends the trial court erred in 1) denying his motion to suppress the evidence discovered in a search where the State did not prove abandonment by clear, unequivocal and decisive evidence, and 2) denying his motions for judgment of dismissal on the charge of resisting an officer without violence, contending that the officer and J.W. were engaged in a consensual encounter and J.W. had the right to ignore the police officer’s order and to leave the scene. We affirm the trial court’s denial of the motion to suppress, but reverse the trial court’s denial of the motion for judgment of dismissal on the charge of resisting an officer without violence. We also affirm the State’s cross-appeal on the latter issue.

THE MOTION TO SUPPRESS

J.W. was charged with possession of cocaine with intent to sell, and resisting an officer without violence. Prior to the start of the adjudicatory hearing on these charges, the court held an evidentiary hearing on J.W.’s motion to suppress. Officer Wing was the only witness to testify at the hearing. He testified that on March 23, 2010, he did a “drive-by” of a location where three young males were allegedly involved in narcotics sales. As he drove by, Officer Wing observed J.W. walk briskly into the front yard of a house and hand a black pouch, resembling a sunglass case, to another individual, later identified as Mr. Locke. Mr. Locke then placed the pouch underneath the platform-raised house. The pouch was not tossed or thrown underneath the house. Officer Wing exited the police car as the pouch was being placed under the house. He asked J.W. and Mr. Locke to sit down on the porch. Though the two initially complied with Officer Wing’s instructions, J.W. subsequently stood up, walked to the front door, opened it and attempted to go into the house. Officer Wing ordered J.W. to sit back down and held the front door as J.W. tried to slam it shut. An occupant of the house tried to deny entrance to J.W. Officer Wing grabbed J.W. by the shirt and pulled him out of the house, and handed him off to a second officer on the scene. Officer Wing then seized the black pouch from under the house and searched the contents of the pouch, discovering the cocaine.
At the conclusion of the suppression hearing testimony, defense counsel argued that the warrantless search of the black pouch violated the Fourth Amendment, contending the pouch was deliberately placed under the house and J.W. had a *375 reasonable expectation of privacy in its contents.[1] The State argued the search of the pouch did not violate the Fourth Amendment because it was abandoned and the abandonment was not the product of police illegality. The court denied the motion to suppress without providing a basis for its ruling.
Abandonment under property law concepts is to be differentiated from abandonment for Fourth Amendment purposes:
The distinction between abandonment in the property-law sense and abandonment in the constitutional sense is critical to a proper analysis of the issue. In the law of property, the question ... is whether the owner has voluntarily, intentionally, and unconditionally relinquished his interest in the property so that another, having acquired possession, may successfully assert his superi- or interest.... In the law of search and seizure, however, the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment.... In essence, what is abandoned is not necessarily the defendant’s property, but his reasonable expectation of privacy.
State v. Kennon, 652 So.2d 396, 398 (Fla. 2d DCA 1995) (quoting 1 Wayne R. LaFave, Search and Seizure § 2.6(b), 464-66 (2d ed.1987)).
Therefore, the question is not whether J.W. abandoned the pouch and its contents, but whether by his actions and words, he abandoned his reasonable expectation of privacy in the pouch and its contents. In Kennon, for example, officers were conducting “bar checks” to deter fights occurring in the establishments. As the officers walked into the parking lot of a bar to conduct a check, they observed Kennon walking toward them with an object in her hand. When the officers were ten yards away from Kennon, she stopped at a parked vehicle, looked around, knelt beside the rear of the passenger side of the vehicle, and placed the item in her hand behind the tire. Officers found a pouch there, opened it, and discovered marijuana. In reversing the trial court’s order suppressing the evidence, our sister court held: “Kennon could not expect Fourth Amendment protection when she chose to hide drugs under the wheel of a vehicle in a public area and walk away.” Kennon, 652 So.2d at 399. Under similar circumstances, the Fourth District in State v. Lampley, 817 So.2d 989 (Fla. 4th DCA 2002), reversed a suppression order, holding that the defendant had no reasonable expectation of privacy in a paper bag containing drugs that he stored in the wheel well of a truck between drug transactions.
J.W. asserts that Mr. Locke’s act of placement of the pouch under the house does not constitute an abandonment, that J.W. continued to maintain an expectation of privacy in the contents of that pouch, and that this expectation of privacy was violated by the officer’s warrantless seizure of the pouch and search of its contents.
J.W.’s position however, assumes too much and ignores the most important circumstance in the chain of events: J.W. was not the person who placed the pouch under the house. Instead, J.W. voluntarily gave the pouch to Mr. Locke. Upon *376 doing so, J.W. relinquished possession, custody and control of the pouch to a third person, who then had exclusive possession, custody and control over the object and its contents. We need not reach the question of whether J.W. “abandoned” the pouch, because the evidence at the hearing fails to establish J.W.’s standing to contest the search and seizure.[2] In other words, whether J.W. abandoned the pouch and its contents is not the real question. The question is whether, by giving Mr. Locke the pouch, J.W. abandoned his reasonable expectation of privacy in the pouch and its contents, and with it any legal standing to challenge the subsequent seizure and search. J.W. failed to establish at the hearing that he had (or maintained) a reasonable expectation of privacy in the pouch once he voluntarily relinquished the pouch to Mr. Locke.[3]
J.W. contends that reversal is warranted by O’Shaughnessy v. State, 420 So.2d 377 (Fla. 3d DCA 1982). In O’Shaughnessy, a police officer stopped the defendant and asked him to explain his presence in the neighborhood. The defendant explained he had just come from visiting a nearby house, and the officer accompanied the defendant to the house to verify this explanation. Before entering the house, the defendant took off his jacket and laid it on a hedge near the porch of the house. The officer found no one home at the house, and he and the defendant began to walk away. The officer picked up the jacket to hand it to the defendant and felt it was heavy. The officer also noticed a bulge in the pocket. Instead of returning the jacket to the defendant, the officer searched it, discovering jewelry and a jewelry box. The trial court denied the motion to suppress and this Court reversed, finding that
from the words, acts and other objective facts of the present case, ... that by removing his jacket, placing it on a hedge a few feet from him, and commencing to walk away in front of the officer, the defendant did not renounce his justified expectation of privacy in the jacket or its contents.
Id. at 379.
O’Shaughnessy is inapposite, because there the defendant himself exercised control over the object and its contents by placing the jacket on the bush. He con- *377 tinned to exercise control over it and by his conduct had not yet relinquished his interest in the jacket or his reasonable expectation of privacy in the jacket and its contents. By contrast, the only evidence presented at the evidentiary hearing in this case supports the trial court’s conclusion that J.W. gave up his interest in and control of the pouch and its contents by giving the pouch to Mr. Locke. In the absence of any evidence to the contrary,[4] the evidence at the hearing established objectively that once the pouch was given to Mr. Locke, he had exclusive custody, possession, dominion and control over the pouch to the exclusion of all others, including J.W. J.W. had abandoned any expectation of privacy in the pouch and its contents.
The circumstances presented in United States v. Payne, 119 F.3d 637 (8th Cir.1997), are closely analogous. In Payne, the defendant was seen carrying a suitcase and placing it into the trunk of the co-defendant’s car. The co-defendant drove away and was later stopped by police. A search of the trunk revealed the suitcase, and a search of the suitcase revealed twenty kilograms of cocaine. Defendant was charged with conspiracy to distribute and possession with intent to distribute cocaine and moved to suppress the drugs found in the trunk, contending the search and seizure violated the Fourth Amendment. The trial court denied the motion and the Eighth Circuit affirmed, holding that the defendant “had no legitimate expectation of privacy in the suitcase found in [co-defendant’s] car. Id. at 642. Tellingly, and similar to the instant case, the court noted that the defendant had “presented no evidence that he owned the suitcase, had historical use of the suitcase, or had the ability to regulate access to the suitcase .... Finally no evidence in the record indicates that the suitcase had any type of identification tags indicating that the suitcase belonged to Payne.” Id.; see also Comm. v. Hawkins, 553 Pa. 76, 718 A.2d 265, 267-68 (1998) (defendant handed contraband to co-defendant, who then placed it in his mouth. Police took custody of co-defendant and extracted contraband from his mouth. Pennsylvania Supreme Court held that defendant lacked standing to challenge search and seizure as he “abandoned any personal privacy interest upon transferring the contraband to [co-defendant]”).
Because J.W. failed to establish the requisite standing to contest the legality of the search, we affirm the trial court’s denial of the motion to suppress.

THE ADJUDICATORY HEARING

Following the hearing on the motion to suppress, the court held an adjudicatory hearing, with Officer Wing testifying again. Wing testified that when he approached J.W. it was a consensual encounter because he did not have reasonable suspicion to conduct an investigatory stop. His remaining testimony was consistent with that previously discussed. Officer Jirón also testified at the adjudicatory hearing. According to Jirón, after Wing handed J.W. off to him and Jirón restrained J.W. by the waistband, J.W. turned, slapped Jirón on the hand, and fled. Jirón further testified that he chased J.W. and yelled at him to stop, but J.W. kept on running. This all took place before the drugs were discovered. When the State rested its case, defense counsel moved for a judgment of dismissal as to the charge of resisting an officer without violence. J.W. argued the State’s evidence *378 failed to establish that the officers were in the lawful execution of a legal duty in attempting to detain J.W. J.W. contends that the officers were merely engaged in a consensual encounter, and a citizen has the right to ignore police officers and leave the scene during this type of encounter.
We review this issue de novo, McDuffie v. State, 970 So.2d 312 (Fla.2007), and hold that the trial court erred in denying the motion for judgment of dismissal on the charge of resisting an officer without violence.
 To convict a defendant of resisting an officer without violence, the State is required to prove first that the officer was engaged in the lawful execution of a legal duty, and second that the actions of the defendant obstructed, resisted or opposed the officer in the performance of that duty. O.B. v. State, 36 So.3d 784 (Fla. 3d DCA 2010). “The element of a lawful execution of a legal duty is satisfied if an officer has either a founded suspicion to stop the person or probable cause to make a warrant-less arrest. Otherwise, the individual has a right to ignore the police and go about his business.” Id. at 786 (quoting E.A.B. v. State, 851 So.2d 308, 311 (Fla. 2d DCA 2003)).
Flight, on its own, will not form the basis of a resisting without violence charge, C.E.L. v. State, 24 So.3d 1181 (Fla.2009), but it will support a resisting charge if the State proves: “(1) the officer had an articulable well-founded suspicion of criminal activity that justifies the officer’s detention of the defendant, and (2) the defendant fled with knowledge that the officer intended to detain him or her.” O.B., 36 So.3d at 788. A juvenile’s flight in a high-crime area creates reasonable suspicion to justify a lawful investigative stop. C.E.L., 24 So.3d at 1189.
Officer Wing testified (and the evidence supports the conclusion) that at the time he approached J.W. for a consensual encounter, he did not have reasonable suspicion to stop him. Because Wing did not have a well-founded suspicion of criminal activity, the State cannot establish the elements for resisting an officer without violence.
The State has cross-appealed this issue, contending that the trial court erred in excluding Wing’s testimony regarding his conversations with informants and that such excluded testimony would have established the necessary reasonable suspicion to justify the stop of J.W., and thus satisfied the “lawful execution of a legal duty” element of the resisting charge. While the State might well be correct in this argument, we need not reach this issue, because the State failed to properly preserve this issue at the trial court level, and thus cannot raise the issue on appeal. Harrell v. State, 894 So.2d 935 (Fla.2005).
We affirm the trial court’s order denying the motion to suppress. We reverse the trial court’s order denying J.W.’s motion for judgment of dismissal on the charge of resisting an officer without violence, and remand for entry of a judgment of dismissal on that count.

. It should be noted that the motion to suppress was not sworn to or signed by J.W., and the motion failed to allege that J.W. resided in, or had any possessory or ownership interest in, the house under which the pouch was placed. His assertion was simply that he had a reasonable expectation of privacy in the pouch and its contents.

. Although the concept of "standing” has, as a practical matter, been merged with the ultimate determination of whether a Fourth Amendment violation has occurred, see Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), we have never dispensed with the requirement that a defendant establish a reasonable expectation of privacy in the place searched or the item seized in order to challenge the constitutional reasonableness of a search. State v. Singleton, 595 So.2d 44 (Fla.1992); State v. Brown, 575 So.2d 763 (Fla. 4th DCA 1991). Prior to Rakas, the defendant was required to make a threshold showing of the requisite standing to contest the search before proceeding to an evidentia-ry hearing. Following the decision in Rakas, this threshold showing is not ordinarily made prior to the evidentiary hearing; instead, the trial court will generally hold the evidentiary hearing and analyze the issue of "standing” (i.e., the existence of a reasonable expectation of privacy) in conjunction with the ultimate determination of whether the search or seizure was conducted in compliance with the Fourth Amendment. See e.g., Nieminski v. State, 60 So.3d 521, 524 (Fla. 2d DCA 2011) (citing Hicks v. State, 929 So.2d 13, 16 n. 3 (Fla. 2d DCA 2006)).

. There is no evidence, for example, that J.W. (as opposed to Mr. Locke) was the actual owner of the pouch and its contents. Nor is there any evidence that J.W. continued to maintain any ability to exercise control over the pouch once he voluntarily relinquished it to Mr. Locke. Whether couched in terms of abandonment or standing, the result is the same: J.W. failed to establish that he had (or maintained) any expectation of privacy in the pouch or its contents once he surrendered it to Mr. Locke.

. For example, J.W. could have attempted to establish that he was the owner (or resident) of the house where the pouch was placed; was the owner of the pouch and its contents; or that he gave the pouch to Mr. Locke for safekeeping or with directions to place the pouch in a specific location.