CONNER, J.
B.L. appeals the denial of his motion to suppress physical evidence and statements, arguing each was obtained in violation of the Fourth Amendment. We agree and reverse.
B.L. was initially charged with carrying a concealed weapon and trespassing. After the denial of his motion to suppress, he pleaded no contest to carrying a concealed weapon, reserving his right to appeal the denial of the motion to suppress.[1] The State dropped the trespassing charge.
The arresting officer, Officer M.D., testified during the suppression hearing. He explained that on the night B.L. was arrested, he and another officer were parked at the northwest corner of a park observing those who entered the park after dark.[2]
Officer M.D. noticed three people enter the park. He shined the spotlight attached to his vehicle on them and approached. Only his spotlight, and not his sirens or flashing lights, was activated. As he approached, he recognized the three people were juveniles. He said, “I need to speak with you for a minute.” While he was still about five feet away from the juveniles, he noticed a sweatshirt being handed by B.L. to his female companion. He explained that his response to the cir *554 cumstances was: “Whoh, what are you doing?” He further explained:
I didn’t know why [B.L.] was handing a sweatshirt over to the female, for what reason, I don’t know. To allay my fears if anything was going on that shouldn’t have been going on, I just went and grabbed it and said, hold on to that. When I grabbed it, I felt a large metal object.
When the sweatshirt was grabbed, both B.L. and the female had their hands on the sweatshirt. As soon as Officer M.D. grabbed the sweatshirt, he felt that it contained a metal object, which he believed was a gun. Upon uncovering the object, he realized it was a knife. At that point, he ordered the three juveniles to get down on the ground.
Officer M.D. testified that nothing, prior to touching the sweatshirt, indicated that a weapon was present. However, he testified that in the past month he had experienced a similar situation in the same park: a female stopped in a similar manner was carrying a .22 caliber handgun.
Officer T.L., the other officer at the scene, explained that when he arrived on the scene, Officer M.D. had the sweatshirt in his hand and was ordering the suspects to the ground. No other witnesses testified.
The State’s theory was that the encounter was consensual and that B.L. began to abandon or actually abandoned the property. Essentially, the State claimed that the seizure was proper because it violated the rights of the female, rather than B.L., and therefore, a motion to suppress evidence initiated by B.L. could not properly be granted because he did not have a privacy interest in the sweatshirt. The trial court agreed and denied the motion, explaining that B.L. was in the process of abandoning the sweatshirt with the knife in it and therefore did not have standing to raise a constitutional violation of the female’s rights.
A trial court’s ruling on a motion to suppress is reviewed by a mixed standard. State v. Holland, 76 So.3d 1032, 1034 (Fla. 4th DCA 2011). Questions of law are subject to de novo review, and a trial court’s determination of historical facts will be upheld if supported by competent, substantial evidence. Id.

Standing

The State argued below and before this court that B.L. was in the process of abandoning the sweatshirt when Officer M.D. seized it. Regarding the abandonment argument, we note that for Fourth Amendment analysis, it is the expectation of privacy that is controlling. We have said, “Implicit in the concept of abandonment is a renunciation of any reasonable expectation of privacy in the property abandoned.” State v. Schultz, 388 So.2d 1326, 1329 (Fla. 4th DCA 1980) (citation omitted) (internal quotation marks omitted).
If an individual gives up his or her privacy interest in an item, then he or she is without standing to raise a Fourth Amendment violation. J.W. v. State, 95 So.3d 372 (Fla. 3d DCA 2012). In J.W., the Third District analyzed Fourth Amendment privacy expectations when one person hands an object to another person. Id. at 374-75. J.W. walked into the front yard of a house and handed a pouch to a gentleman outside the house. Id. at 374. The gentleman placed the pouch under the house. Id. A police officer who was driving by saw the interaction, got out of his car, and asked the two to sit on the porch. Id. J.W. complied, but then attempted to go inside the house. Id. At that point, he was seized, and the pouch was searched. Id. A motion to *555 suppress followed; the State argued that the pouch had been abandoned. Id.
Whether J.W. abandoned the pouch and its contents was not the pertinent question according to the Third District. The pertinent question was whether, by giving the other gentleman the pouch, J.W. abandoned his reasonable expectation of privacy in the pouch and its contents and with it any legal standing to challenge the subsequent seizure and search. Id. at 376. The Third District opined that when J.W. gave the pouch to the other gentleman he relinquished his reasonable expectation of privacy in it by giving “exclusive possession, custody and control over the object and its contents.” Id. The Third District concluded that J.W. did not have standing to contest the search.
Because B.L. had not yet let go of the jacket, he retained some control and possession of it. Therefore, his reasonable expectation of privacy had not yet been relinquished. As a result, B.L. did have standing to contest the seizure of the sweatshirt and subsequent search.

Nature of Encounter: Consensual or Investigatory

Whether an encounter rises to the level of an investigatory stop or remains a consensual encounter is a question of fact. O.A. v. State, 754 So.2d 717, 719 (Fla. 4th DCA 1998). “A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Terry v. State, 668 So.2d 954, 958 (Fla.1996).
Three levels of police-citizen encounters exist, ranging from a consensual encounter, to an investigatory stop, to an arrest. Gentles v. State, 50 So.3d 1192, 1196 (Fla. 4th DCA 2010). Investigatory stops require articulable suspicion; arrests require probable cause. Id. at 1197. A consensual encounter does not invoke constitutional safeguards. Popple v. State, 626 So.2d 185, 186-87 (Fla.1993). Because here the State conceded that Officer M.D. did not have reasonable suspicion to exceed a consensual encounter and because the record reflects no articulated reasonable suspicion, the encounter would be improper if it transitioned into an investigatory stop. Gentles, 50 So.3d at 1198. Whether a police-citizen encounter has transitioned from consensual into investigatory is determined by the totality of circumstances. O.A., 754 So.2d at 720.
“It is well established that an officer does not need to have a founded suspicion to approach an individual to ask questions. However, even an initially consensual encounter can escalate into a stop.” State v. R.H., 900 So.2d 689, 692 (Fla. 4th DCA 2005) (citations omitted) (internal quotation marks omitted). In R.H., this court explained that a couple of officers approaching and asking “Hey, how you doing? What’s your name? Your date of birth?” continued to be a consensual encounter. Id. at 691. Similarly, here, Officer M.D.’s statement — “I need to speak with you for a minute” — did not raise the level of restrictiveness or represent a show of authority. Although slightly more authoritative than a question, his statement was not an order. Rather, it was a request that, standing alone, a reasonable individual would have felt free to decline and therefore would not constitute a seizure.
If an officer uses his or her authority to restrict an individual’s freedom, then the interaction is not consensual and requires a minimum of reasonable suspicion. Popple, 626 So.2d at 187-88. Illumi *556 nating individuals with a police vehicle’s spotlight may increase the level of restrictiveness. Leroy v. State, 982 So.2d 1250, 1253 (Fla. 1st DCA 2008). In Leroy, the First District explained that when an officer “lit up” a suspect’s vehicle and approached in a confined space the suspect was detained. Id. at 1252. This court has previously said that use of a spotlight or flashlight is one factor to be considered in evaluating whether a seizure has occurred, but this factor alone is not dispositive. See Smith v. State, 87 So.3d 84 (Fla. 4th DCA 2012); State v. Goodwin, 36 So.3d 925 (Fla. 4th DCA 2010).
Physical touching or grabbing of an individual’s person or possessions will also raise the level of restrictiveness. See United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Stephens v. State, 656 So.2d 531, 532 (Fla. 2d DCA 1995). In Copeland v. State, 717 So.2d 83 (Fla. 1st DCA 1998), the First District found that a consensual encounter was ended and an investigatory stop began when an officer briefly grabbed Copeland’s jacket pocket, squeezing to feel what made up the visible bulge. Id. at 84-85. The court explained: “The act of reaching, touching, feeling, and squeezing Appellant’s jacket constituted a show of authority which restrained Appellant’s freedom to move, comply, or otherwise terminate the encounter.” Id. at 85.
Evaluating the totality of circumstances here, we conclude that B.L. was seized at the moment the sweatshirt he was jointly holding with a female was grabbed by Officer M.D. The circumstances which elevated this police-citizen encounter to an investigatory stop include a police spotlight illuminating B.L.’s person and the officer grabbing an item still in his hands. Both of these circumstances transformed a consensual encounter into an encounter a reasonable person would not feel free to end. The State conceded Officer M.D. did not have articulable suspicion for an investigatory stop.

Conclusion

Having concluded that B.L. had standing to contest the seizure of the weapon and the seizing officer did not have grounds for an investigatory stop, we reverse the denial of B.L.’s motion to suppress and remand the case for the trial court to vacate the determination of delinquency and the disposition order.

Reversed and Remanded.

GROSS and TAYLOR, JJ., concur.

. The parties and the trial court agreed the motion to suppress was dispositive.

. Entering the park at night was a violation of a city ordinance; however, the State conceded at the hearing that it was not arguing that the officer had probable cause to arrest B.L. because he was trespassing in the park.