WOLF, J.,
dissenting.
In reviewing a motion to suppress, the trial court’s determination is presumed to be correct, and the reviewing court must interpret the evidence, reasonable inferences, and deductions derived from the evidence in a manner most favorable to sustaining the trial court’s ruling. See Connor v. State, 803 So.2d 598, 605 (Fla.2001). A court must also look at the totality of the circumstances and make common sense judgments and inferences about human behavior in determining the police’s authority to initiate a temporary detention. See Mackey v. State, 124 So.3d 176 (Fla.2013). Applying those concepts leads me to the conclusion that the officers acted reasonably in detaining appellant in this case. We, therefore, should affirm.
*938 The officers had specific, particularized information that a drug deal was to occur at a specific time and place. The information supporting their knowledge came from a confidential informant, and it was verified by at least five telephone conversations between officers and appellant setting up the drug deal, one call just several minutes before the incident. Based on the phone calls, the officers knew that appellant, who was black, would come from a particular direction, to a prearranged location, at a specific time, in order to consummate the drug deal. In fact, appellant told the police that he was bringing his cousin along to the meeting, the sole purpose of which was for the sale of drugs. It was a reasonable conclusion that both men were part of a common criminal scheme. At the very least, it was reasonable for the police to investigate both parties’ potential involvement in this transaction.
At the time of the incident, it was 1:00 a.m. Two black men came from the expected direction at the expected time. They were approaching the prearranged location. No one else was on the street. One of the men made a hand gesture. When the officer said, “I got your money,” they yelled, “f— your money.” It was reasonable to infer this reaction was highly unusual behavior for an innocent person but consistent with a dealer who may have been spooked.
When the officer identified himself, the men fled. It would have been unreasonable for the officers not to follow up with their investigation at this point. The action of fleeing when coupled with the artic-ulable suspicion of criminal activity justified the actions of the officers in detaining the men. See Illinois v. Wardlow, 528 U.S. 119, 124-25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (finding flight coupled with other circumstances such as a high crime area justified Terry stop). Wardlow stands for the proposition that fleeing is one circumstance which may be considered along with other factors that may lead the police to believe that reasonable suspicion exists. The other circumstances leading to a reasonable suspicion do not necessarily have to include that the incident occurred in a high crime area. Limiting Wardlow in this fashion, as suggested by the majority, ignores the dictates of the Supreme Court to consider the totality of the circumstances. In fact, the specific knowledge of an imminent drug deal coupled with fleeing is far more compelling than just a general knowledge that an area is a high crime area.
Once the police had reasonable suspicion, the act of fleeing constituted obstruction of justice. C.E.L. v. State, 24 So.3d 1181 (Fla.2009) (finding continued flight after legally justified verbal order to stop constitutes obstruction of justice). It is not necessary, as suggested by the majority, that the police use the magic word “stop” to let the suspect know that the police wish to interrogate him. In this case, the officer announced specifically that he was a police officer and directed his comments to the suspects. When the men fled, the officer immediately chased after the individuals. These circumstances were sufficient to put appellant and his companion on notice that the police wished them to stop.
This is unlike the situation in O.B. v. State, 36 So.3d 784 (Fla. 3d DCA 2010), and S.B. v. State, 31 So.3d 968 (Fla. 4th DCA 2010), relied on by the majority, where there was no assertion of authority directed to any particular individual prior to the individual fleeing.
I would affirm.