[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12903
Non-Argument Calendar
_____

D.C. Docket No. 9:11-cv-80374-JMH

MARJORIE DEPALIS-LACHAUD,

Plaintiff-Appellee,

versus

KENNETH E. NOEL, Individually and as Deputy
Sheriff Palm Beach County,
SHERIFF OF PALM BEACH COUNTY,
Ric L. Bradshaw, as Sheriff,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 30, 2013)

Before CARNES, BARKETT, and COX, Circuit Judges.

PER CURIAM:

Deputy Sheriff Kenneth Noel arrested Marjorie Depalis-Lachaud, a nurse, when she did not follow his order to take a blood sample from a hospitalized man suspected of causing a car accident while driving under the influence of alcohol. Depalis-Lachaud sued Noel under 42 U.S.C. § 1983 for violating her rights under the Fourth Amendment. The district court denied Noel's motion for summary judgment based upon the defense of qualified immunity and granted Depalis-Lachaud's motion for summary judgment on her Fourth Amendment claims. Noel appeals these rulings. We affirm the denial of summary judgment based upon qualified immunity but reverse the grant of summary judgment to Depalis-Lachaud.

## I.

The incident leading to this case occurred on June 17, 2009. That night, Noel, a deputy sheriff of the Palm Beach County Sheriff's Office, arrived around 10 p.m. to perform an intoxication assessment of a man hospitalized following a car accident. After observing the man, Noel approached the nurses' workstation and asked Depalis-Lachaud, one of the registered nurses on duty at the time, to obtain a blood sample from the man as evidence of his blood alcohol content. (Florida Statutes § 316.1933(2)(a) allows only certain individuals, including

2

registered nurses, to draw blood samples from suspects of intoxicated driving following accidents.)  The parties offer contrasting descriptions of what happened next.  Because we find the difference material, we provide both accounts.

According to Noel, Depalis-Lachaud "gave [him] a puzzled look" when he requested that she draw blood, and she told Noel that the hospital "d[id]n't do that." (R.1-17-1 at 8.)  She "then turned around and started to walk away." (*Id.*) When Noel explained to her that he was a police officer conducting an investigation that required the immediate collection of blood evidence, she again told him that the hospital did not "do that[] for law enforcement." (*Id.*)  Noel then held out a blood-draw kit and told her that her continued refusal to assist him would violate Florida Statute § 843.02, which criminalizes obstruction of an officer in the lawful execution of a legal duty. (*Id.*)  Depalis-Lachaud apparently "was ignoring" him and told him that she had to "make a phone call . . . to some superiors to see whether or not they were going to allow her to draw blood." (*Id.*) Noel told her he could not wait for her to make phone calls or ask superiors, but he said in his deposition that she did not make any calls or have any conversations with superiors anyway. (*Id.*)  Noel then told her that he was "giving [her] an order" to "draw this blood or . . . be placed under arrest," and he asked her, "Are you going to draw this blood, yes or no." (*Id.* at 9.)  Depalis-Lachaud responded, "No." (*Id.*)  Noel then arrested her and took her to his car in the parking lot.

3

Depalis-Lachaud's account differs somewhat.  She agrees that she told Noel, in response to his initial request for a blood sample, that "it was against the policy of the V.A. to get the blood."  (R.1-17-5 at 10.)  She also told him to "go call somebody else."  (*Id.*)  When he persisted, she said, "We're waiting for the doctor. The doctor has to make that decision."  (*Id.* at 12.)  She then left the workstation and spoke with the doctor on duty that night, Richard Harrison.  (*Id.* at 11, 12.) Harrison told her that he would have to speak with the chief emergency room physician, a Dr. Lammert, so Depalis-Lachaud found the administrator in charge and asked him to call Lammert to get authorization to collect the sample.  (*Id.* at 11.)  Depalis-Lachaud returned to the workstation where Noel was waiting and told him that she had just spoken to Harrison, and Harrison would come to the desk to talk to Noel.  (*Id.* at 13.)  Noel told her that he needed the blood immediately and would arrest someone if he did not get it.  (*Id.*)  When Depalis-Lachaud continued to refuse to draw the blood, Noel arrested her.

After taking Depalis-Lachaud to his car, Noel returned to the workstation and had another nurse, Linda Denison, collect the blood sample from the man. (R.1-17-1 at 10.)  After around thirty minutes, Noel released Depalis-Lachaud from the car and from her handcuffs, and he gave her a notice to appear on an obstruction charge.  (R.1-17-5 at 16–17.)

Following the incident, Depalis-Lachaud filed a seven-count complaint against Noel and Palm Beach County Sheriff Ric Bradshaw, which she later amended to include eight counts. Counts I and III together seek to hold Noel liable under 42 U.S.C. § 1983, alleging that Noel violated the Fourth Amendment when he arrested Depalis-Lachaud without probable cause. Counts II and IV together seek to hold Noel liable under § 1983 for violating the Fourteenth Amendment when he treated her, a black woman, differently than hospital employees of different races. Count V seeks to hold both defendants liable under § 1983 in their official capacities, Count VI seeks to hold Bradshaw liable under § 1983 for a Fourth Amendment violation, and Counts VII and VIII allege state law negligence claims against Bradshaw.

Noel and Bradshaw moved for summary judgment on all counts. Noel's motion argued that he was entitled to qualified immunity from Counts I and III (the Fourth Amendment claims against him) and made various arguments regarding the other six counts.[1] Depalis-Lachaud responded to the motion and filed a cross-motion for summary judgment on Counts I, III, and V. The district court granted Noel and Bradshaw's motion on Counts VI, VII, and VIII but denied the rest of the

---

[1] The motion does not clarify whether Noel intends his qualified-immunity argument to apply against the Fourth Amendment claims (Counts I and III) only or to the Fourteenth Amendment claims (Counts II and IV) as well. We believe, however, that Noel intended to apply his defense of qualified immunity to Counts I and III only. Noel never makes a specific argument that he is entitled to qualified immunity from Counts II and IV, and he argues on appeal that the district court erred in denying qualified immunity only on Counts I and III.

5

motion, including Noel's argument that he was entitled to qualified immunity on Counts I and III.  In the same order, the court granted Depalis-Lachaud's motion for summary judgment on Counts I, III, and V.  The court allowed Counts II and IV to proceed to trial.

Noel filed an interlocutory appeal of the district court's denial of qualified immunity on Counts I and III.  He also seeks to invoke our pendent jurisdiction to review the district court's grant of summary judgment to Depalis-Lachaud on Counts I, III, and V and the court's denial of Noel's motion for summary judgment on Counts II and IV.  We exercise our appellate jurisdiction over the denial of qualified immunity on Counts I and III, and we exercise our pendent jurisdiction over the district court's grant of summary judgment to Depalis-Lachaud on those counts only.  We decline to address the remaining issues—the court's grant of summary judgment on Count V and the denial of summary judgment on Counts II and IV—for lack of appellate jurisdiction.

## II.

We thus consider two rulings: (1) the district court's denial of Noel's assertion of qualified immunity from Counts I and III, and (2) the court's consequent grant of Depalis-Lachaud's motion for summary judgment on those counts.  We review a district court's resolution of a motion for summary judgment de novo.  *McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009).

6

Summary judgment is appropriate when no genuine issue of material fact remains for trial and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Grider v. City of Auburn*, 618 F.3d 1240, 1246 n.1 (11th Cir. 2010). In reviewing a court's grant or denial of summary judgment, we resolve all issues of material fact in favor of the non-moving party. *Terrell v. Smith*, 668 F.3d 1244, 1248 (11th Cir. 2012); *McCullough*, 559 F.3d at 1202.

Here, we consider the district court's resolution of two opposing summary judgment motions. Our review of the district court's denial of Noel's motion for summary judgment requires us to resolve all issues of material fact and draw all inferences from the facts in Depalis-Lachaud's favor. Our review of the district court's grant of summary judgment to Depalis-Lachaud, however, requires us to do the opposite and resolve all factual issues in Noel's favor.

The district court ruled that, under any version of the facts, Noel was not entitled to qualified immunity. On that basis, the court denied qualified immunity to Noel and granted summary judgment to Depalis-Lachaud. Thus, our holding here depends on whether, applying the summary judgment standard separately to each ruling, Noel was entitled to qualified immunity from Counts I and III. We begin with a brief explanation of qualified immunity, and we then address the district court's rulings.

Qualified immunity shields a government official sued in his individual capacity from § 1983 liability when the official's conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Grider*, 618 F.3d at 1254.  The doctrine "protect[s] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

To invoke qualified immunity, an official must first show that he was acting within his discretionary authority when the alleged violation occurred. *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991).[2]  If he does, the non-moving party must show that the officer is not entitled to qualified immunity by proving that the "officer's conduct violated a constitutional right" that "was clearly established" by existing law at the time.  *Lee*, 284 F.3d at 1194.  In false-arrest cases like this one, the qualified immunity standard requires the plaintiff to show that the officer lacked both actual probable cause and arguable probable cause for the arrest; thus, if an officer shows that he had either type of probable cause, he is entitled to qualified immunity.  *See, e.g.*, *Coffin v. Brandau*, 642 F.3d 999, 1006 (11th Cir. 2011) (en banc); *Brown v. City of Huntsville*, 608 F.3d 724, 734–36 (11th Cir. 2010).  An officer has actual probable cause when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably

---

[2] Neither party disputes that Noel acted within the scope of his discretionary authority when he arrested Depalis-Lachaud.

trustworthy information, would cause a prudent person to believe" that the suspected person "is committing . . . an offense." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995). An officer has arguable probable cause when "'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest' the plaintiff[]." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001). We can analyze the existence of actual or arguable probable cause in either order, and if we conclude that the officer had one type of probable cause, we need not analyze the other. *See Coffin*, 642 F.3d at 1006.

### A.

We turn to the district court's denial of Noel's defense of qualified immunity. We will affirm if we conclude, on de novo review and making all factual inferences in Depalis-Lachaud's favor, that Noel had neither type of probable cause.

Noel argues that either of two statutes—Florida Statutes § 843.02 or § 843.06—provide arguable, if not actual, probable cause to justify the arrest. Construing the record in Depalis-Lachaud's favor, we disagree.

Section 843.02 provides that "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor." In proving

9

a § 843.02 violation, the state must show that "(1) the officer was engaged in the lawful execution of a legal duty[] and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009).

We cannot see how Depalis-Lachaud's account of the encounter leading to the arrest demonstrates obstruction or resistance—in fact, she actually seems to have assisted Noel more than she resisted him. Her description of events suggests that she responded to Noel's request by actively and immediately seeking authorization from the appropriate superiors, as she believed the hospital's policies required. When she returned to the nurses' workstation, she continued to attend to Noel's questions by explaining to him that Harrison, the physician in charge, would come up front to speak to him about the matter. Noel arrested her as she insisted that she lacked the required authorization to assist him. No reasonable officer could have believed that § 843.02 provided probable cause to arrest a nurse who had merely passed an officer's request to the attending doctor and refused to assist him without required authorization. Noel therefore lacked even arguable probable cause to arrest Depalis-Lachaud under § 843.02, at least by her account.

For the same reason, § 843.06 also fails to provide Noel with arguable probable cause. Section 843.06 provides in relevant part that "[w]hoever, being required in the name of the state by any officer . . . neglects or refuses to assist him

10

or her in the execution of his or her office in a criminal case . . . shall be guilty of a misdemeanor of the second degree."  Again, Depalis-Lachaud's actions, according to her deposition testimony, indicate no neglect or refusal to assist Noel in the execution of his office; she appears to have done all in her power to respond to Noel's request.  No reasonable officer could have believed that § 843.06 supplied probable cause for the arrest, and Noel lacked even arguable probable cause.

We conclude that the district court properly denied the motion for summary judgment to the extent that it raised the defense of qualified immunity against Counts I and III.

### B.

We also conclude, however, that the district court erred in granting summary judgment to Depalis-Lachaud on those counts because, construing the record this time in Noel's favor, Noel had arguable probable cause for the arrest under either § 843.02 or § 843.06.

Noel's account of the events paints a materially different picture than Depalis-Lachaud's account.  Noel's deposition transcript and other incident reports suggest that, instead of immediately seeking authority from her superiors, Depalis-Lachaud dismissed Noel's request initially by unclearly citing hospital policies, ignored his presence when she returned to the nurses' workstation, prevented him from acquiring assistance by making no phone calls and having no conversations

11

with superiors to seek authorization, and directly refused Noel's order. Notably missing from Noel's account of the incident is any indication that he knew that Depalis-Lachaud sought authorization from Harrison or anyone else in response to Noel's request. On these facts, we conclude that Noel had at least arguable probable cause under § 843.02 or § 843.06, which therefore entitles him to qualified immunity.

Section 843.02 criminalizes the resistance or obstruction of an officer engaged in the lawful execution of a legal duty. *C.E.L.*, 24 So. 3d at 1185–86. That Noel was "engaged in the lawful execution of a legal duty" when he requested or ordered Depalis-Lachaud to assist him is plain. Florida Statutes § 316.1933(1)(a) provides that, if an officer "has probable cause to believe that a motor vehicle driven by" an intoxicated person "has caused the death or serious bodily injury of a human being," the officer "shall require" the person to submit to a blood test to determine the presence of alcohol or a controlled substance.[3] Section 316.1933(2)(a) then says that "[o]nly [certain individuals, such as physicians, paramedics, or registered nurses], acting at the request of a law enforcement officer, may withdraw blood" for the purposes of (1)(a). By its plain meaning, the statute allows an officer to force a suspect of intoxicated driving to submit to a blood test in the wake of a serious accident but limits the class of

---

[3] No party challenges the constitutionality of § 316.1933(1)(a).

12

individuals eligible to physically administer the test.  The statute includes this limitation to preserve the health and safety of the suspect[4] and not, as the district court believed, to reserve a right of refusal for the tester responding to the officer's request.  It is difficult to see how Noel's order that Depalis-Lachaud draw blood from the hospitalized suspect does not qualify as a lawful execution of the legal duty created by § 316.1933.

Moreover, construing the evidence in the light most favorable to Noel, a reasonable officer could believe that Depalis-Lachaud obstructed, resisted, or opposed Noel's efforts to obtain the blood sample in violation of § 843.02 or § 843.06.

Relevant case law clarifying the specific type of conduct constituting a § 843.02 violation is scant.[5]  Depalis-Lachaud's actions, however, could easily fit the plain meanings of the words.  For example, by ignoring Noel's presence and seeking no authorization to draw blood for Noel after she told him she was required to, she arguably hindered—or obstructed—Noel's efforts to obtain a

---

[4] *See Mehl v. State*, 632 So. 2d 593, 594–95 (Fla. 1993) (recognizing that § 316.1933 is intended to allow police to collect blood samples, but it limits the method by which samples are drawn); *Robertson v. State*, 604 So. 2d 793 (Fla. 1992) (Grimes, J., concurring) (acknowledging that the provision limiting the ability to draw blood to certain individuals was included for the purpose of protecting the health and safety of the suspect).

[5] Only decisions of the United States Supreme Court, this court, and the highest court of the pertinent state (here, the Florida Supreme Court) clearly establish the law for qualified-immunity purposes.  *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).  The several cases from intermediate appellate courts in Florida that are cited in the district court's order do not bear on whether Noel is entitled to qualified immunity.

13

sample, especially given the need to draw a sample while alcohol remained in the suspect's bloodstream.  Moreover, by refusing to assist him or follow his order to draw the blood, she arguably opposed his request.  Nothing in the statute or relevant case law suggests that no reasonable officer could believe that Depalis-Lachaud was violating § 843.02 by refusing to assist Noel in collecting the sample and by neglecting to seek authorization to do so.[6]

Even if § 843.02 does not supply arguable probable cause, § 843.06 does. The district court rejected Noel's § 843.06 argument because the statute only requires an individual to assist an officer "in his official duties of preserving the peace, apprehending or securing a suspect, or assisting in the rescue or preventing the escape of an arrestee," and it "does not require a person to assist an officer in the collection of evidence."  (R.2-61 at 18 n.7 (citing *State v. Parish*, 509 So. 2d 1365, 1366 (Fla. Dist. Ct. App. 1987)).)  We find no conclusive support in relevant case law for the district court's limited interpretation of § 843.06, and even the case the district court cites alludes to a broader interpretation.  *See Parish*, 509 So.

---

[6] The parties give great importance to a letter sent from Palm Beach County State Attorney Barry E. Krischer to all area hospitals in 2007.  The letter, apparently responding to increasingly frequent incidents of hospital staff refusing to draw blood for law enforcement officers, advises hospital staffs that "[a]ny nurse who refuse[s] to draw blood when requested by a law enforcement officer is in violation of Florida Statute § 843.02 as actively obstructing a police officer in his lawful investigation."  (R.1-17-4 at 2.)  The letter is not signed, does not support its interpretation with any case law, and does not respond to the exact incident in this case, and the district court gave the letter negligible weight for these reasons.  We agree that the letter's conclusion appears unsupported and recognize that the opinion of a government attorney cannot, by its own merit, supply probable cause for an arrest.  We conclude, however, that Noel had arguable probable cause even without reference to or reliance on this letter.

14

2d at 1366 (recognizing that §843.06 "warn[s] a person of common intelligence that one must not refuse or neglect to aid an officer who asks for assistance" in his official duties, which *include* preserving the peace, apprehending a suspect, assisting in rescue, or preventing an escape).  Nothing in relevant case law suggests that no reasonable officer could believe that § 843.06 provided probable cause to arrest Depalis-Lachaud under the circumstances, and we conclude, given her actions in response to Noel's requests for assistance, that a reasonable officer could believe that probable cause existed.

We conclude, after resolving all disputes of material fact in Noel's favor, that Noel had arguable probable cause to arrest Depalis-Lachaud for a violation of either § 843.02 or § 843.06.  We therefore reverse the district court's grant of summary judgment to Depalis-Lachaud on Counts I and III and remand.

III.

In sum, we affirm the district court's denial of summary judgment to Noel on Counts I and III but reverse its grant of summary judgment to Depalis-Lachaud on those counts because the qualified immunity issue cannot be resolved on the record available at the summary judgment stage.

We are mindful that the question of qualified immunity should be resolved at the earliest possible stage in litigation.  *See Crawford v. Carroll*, 529 F.3d 961, 978 (11th Cir. 2008).  We also note that, in cases like this one where the question

15

cannot be resolved at summary judgment because of a disputed issue of material fact, the officer may renew his qualified immunity defense with a timely Rule 50(a) or 50(b) motion or by requesting special jury interrogatories on the factual issues underlying the defense. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1487–88 (11th Cir. 1996); *Stone v. Peacock*, 968 F.2d 1163, 1166 (11th Cir. 1992).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.